**In re AMERICAN RANGE & FOUNDRY CO.**

District Court, D. Minnesota, Third Division.

Jan. 27, 1926.

Todd, Fosnes & Sterling, of St. Paul, Minn., for petitioners.

SANBORN, District Judge.

This matter came on to be heard before the court on the 22d day of January, 1926, upon the petition of Todd, Fosnes & Sterling and S. A. Mitchell to review an order of Hon. Gideon S. Ives, Referee in Bankruptcy, dated December 11, 1925, with reference to an allowance of attorneys' fees. Todd, Fosnes & Sterling appeared for the petitioners, and there were no other appearances.

As nearly as I can ascertain the facts relative to this controversy, they are about as follows:

On the 23d day of March, 1925, Todd, Fosnes & Sterling and S. A. Mitchell filed with the referee a petition for allowance of fees and disbursements. From June 9, 1924, to December 30, 1924, they had acted as attorneys for a creditors' committee prior to the filing of the involuntary petition, for the petitioning creditors, for the receivers, and for the trustee, which services they asserted were of the reasonable value of $15,000. From their account, attached as Exhibit A to the petition, it appeared that they had received $5,000 from the receivers, and $7,000 from the trustee, or a total of $12,000.

By a supplemental petition dated April 2, 1925, and filed with the referee on the same date, these attorneys set out that they acted as attorneys for the receivers from October 27, 1924, until November 7, 1924, when C. D. MacLaren was appointed trustee in bankruptcy. They further state that in the application for fees which they had theretofore filed, as attorneys for the petitioning creditors and as attorneys for the receivers, the total sum of $15,000 was asked for such services; that they believe that of this amount $14,000 would be a fair and reasonable compensation as attorneys for the petitioning creditors, and that the sum of $1,000 is a fair and reasonable compensation for the attorneys for the receivers. By a supplemental petition dated April 15, 1925, and filed on that date with the referee, they state that, pursuant to the court's direction on the 13th day of April, 1925, they have attempted to segregate the services rendered by them as attorneys respectively for the creditors' committee, the receivers, and the petitioning creditors, and that they represent that an equitable basis of division of the total fee charge of $15,000, as shown by their original petition, would be to allocate $4,000 to the work for the creditors' committee, $3,000 to the creation of the receivership estate and as attorneys for the receivers, and $8,000 as attorneys for the petitioning creditors. They then request as a total allowance, as administration expense of this estate for all services described in their original petition, $15,000, and that said sum be allocated in the manner set out.

On June 9, 1925, the referee made an order reciting that on the 23d day of March, 1925, the receivers filed their report and account, and that on that date the attorneys filed their report, account, and petition for fees for services performed prior to bankruptcy, for services as attorneys for the petitioning creditors and for the receivers, mak-

ing an omnibus charge of $15,000 for all such services; that upon the request of the referee to separate such charges and designate the amount named as services for the receivers, the attorneys filed a supplemental petition in which they claimed fees as attorneys for the receivers in the sum of $1,000; that notice was thereupon given to the creditors under the Bankruptcy Act, in which the amount claimed as fees as attorneys for the receivers was stated to be that sum; that at the hearing on the 13th day of April, 1925, the attorneys presented a second supplementary statement in which they claimed the sum of $3,000 for services as attorneys for the receivers. The referee states that, under section 48 of the Bankruptcy Act (11 USCA § 76), he was required to give notice to the creditors of the amount claimed, and that in this case the amount claimed for fees by the attorneys for the receiver was given at $1,000, in accordance with their supplemental report, and therefore no sum in excess of $1,000 could be allowed. He then states: "It is further claimed by the attorneys for said receivers that they should be allowed for prior services in their efforts to have the receivers appointed. The referee is of the opinion that such claim is not allowable in any court; that such services were performed by the attorneys for the petitioning creditors and have already been allowed them in that capacity." The referee allows $600 as ample and adequate compensation for the services of the attorneys for the receivers, which amounts to a recommendation that that amount be allowed. He calls attention to the advance, on account of expenses and fees of attorneys, of $5,000 made by the receivers, and points out that they had no authority to make this allowance without the order of the court, and that their account should be surcharged to that extent.

The referee made his return on the report and account of the receivers and the attorneys for the receivers to this court, and it was filed on July 13, 1925.

On the 5th day of October, 1925, this court made an order approving the receivers' report and account, it appearing that C. D. MacLaren, trustee, acknowledged the receipt of the sum of $5,000, being moneys refunded to the receivers and by them to the trustee, by Todd, Fosnes & Sterling, representing the unauthorized advance referred to in the report of the referee. It is recited in this order that the attorneys have filed in this court a petition for an allowance for services and expenses to themselves as attorneys for the petitioning creditors and for the re-

ceivers in this case, the same attorneys having served in both capacities, in which petition they credit this estate with $5,000 so paid to them by the receivers, and that it further appears from the receipt to the receivers by the trustee in bankruptcy that said attorneys have paid the trustee the said sum of $5,000 so advanced to them. The court then ordered that the receivers' report and account be approved and the receivers discharged from their trust, and further ordered that the credit of $5,000 so received from the said receivers by said attorneys, and shown in their petition for fees and disbursements filed in this court, be canceled and expunged, and that this court and its referee in making final allowance for said attorneys on said petition will be guided accordingly. This appears to be the only order which was entered upon the return of the referee with reference to attorneys' fees for the receivers.

On July 11, 1925, the referee filed an order allowing as attorneys' fees for services rendered the petitioning creditors up to December 30, 1924, the sum of $6,500, and disallowing certain items of disbursements. At the same time, he filed an order disallowing the attorneys' fees and expenses rendered and incurred for and on behalf of the creditors' committee prior to the time of filing the involuntary petition in bankruptcy. The attorneys petitioned for a review of these orders. The order disallowing attorneys' fees and expenses on behalf of the creditors' committee was confirmed by an order of this court dated September 24, 1925, and the other order referred to was vacated and the matter re-referred to the referee for reargument and reconsideration. It was reargued and reconsidered, and the referee, under date of December 11, 1925, made his order increasing the amount of fees to the attorneys for the petitioning creditors by the sum of $1,500, making a total of $8,000. He also allowed the additional sums of $677.48 cash expenditure and $4,027.79 on account of the audit made by Marwick, Mitchell & Company. The attorneys have again petitioned for a review of the referee's order, claiming that the court erred in holding that they, as attorneys for the petitioning creditors and the receivers herein, should be allowed the sum of $8,000, instead of $12,000, as prayed for in their petition, and in holding that $8,000 is the reasonable value of their services for the petitioning creditors and the receivers. They also claim that some further allowance should have been made on account of disbursements.

The only question worthy of consideration is whether there is anything in the rec-

ord which indicates that the referee made a mistake in fixing their fees at the sum of $8,000. It is somewhat difficult to analyze the situation. Apparently there has been some misunderstanding on the part of the referee and attorneys and possibly this court. In making my order of September 24, 1925, I was under the impression, as therein stated, that the attorneys were claiming $11,000 as the value of services rendered to the petitioning creditors. The referee proceeded upon the theory that the attorneys had limited themselves to $8,000 for this item and that that was the largest amount which could be allowed. The allocation suggested in the supplemental petition hereinbefore referred to suggests that $3,000 ought to be allocated to the creation of the receivership estate and as attorneys for the receivers, and $8,000 as attorneys for the petitioning creditors. In other words, the attorneys apparently proceeded upon the theory that they could be allowed in one order for their services in creating the receivership and also as attorneys for the receivers, and in another for their services for the petitioning creditors. As I understand the situation, at the time application was made for the appointment of a receiver or shortly thereafter, Judge Booth, while he was not willing to appoint a receiver, ordered the Nyes to withdraw from the management of the company and designated the men who were afterwards appointed receivers, to operate and manage the Company in their place. That is what is referred to as the quasi receivership.

■■ The referee was correct in finding that the only recommendation which he could make to the court for allowance of fees in the receivership matter was for services during the ten days that the receivers conducted the business, and that the compensation for services leading up to the receivership should have been included in the allowance of fees for services to the petitioning creditors.

■ The referee was incorrect in his statement that under section 48 of the Bankruptcy Act (11 USCA § 76), he was required to give notice to the creditors of the amount claimed by the attorneys because of services rendered to the receivers. That section relates to the compensation of the receiver, and not the compensation of his attorneys. However, in view of the fact that the statement was made to the creditors that $1,000 was the amount claimed, and that that was reasonable compensation for the services for the ten-day period of the receivership, the attorneys are not prejudiced in any way by

that holding, and furthermore the question of what the allowance shall be to them for their services to the receivers is apparently still an open question.

I am of the opinion that the attorneys had not limited themselves by their suggested allocation of $8,000 for fees for services for the petitioning creditors. But it is apparent that the referee considers that that amount is the reasonable value of all services rendered to the petitioning creditors up to the 30th day of December, 1924, and that that is the real basis of his allowance. It is also evident that this includes all services except those rendered to the receivers during the ten-day period referred to.

The matter seems to have been unduly complicated by reason of the fact that the same attorneys acted in so many different capacities throughout these proceedings, and it was difficult to segregate their charges. The simple and direct way to have handled the matter would have been to have determined the reasonable value of all services rendered by the attorneys and for which this estate was liable up to the date in question, and then to have allocated such portion of that allowance as was proper to the receivership. The balance would then have been the compensation for the attorneys attributable to other services rendered by them for the estate. The result, however, would have been the same in all probability.

■■ There was evidence before the referee which would have justified a greater allowance than he made to the attorneys for their fees. But it is not the business of this court to retry this question or to substitute its judgment for that of the referee, where there is nothing to show that he did not fairly pass on the question in view of the evidence before him, or that there is any mistake of law. It cannot be said that the allowance is now so inadequate as to justify a conclusion that the referee was influenced by anything other than the facts as he had them before him. The business of fixing attorneys' fees in bankruptcy matters is one peculiarly for the referee. If this court should make it a practice to pass upon the question of the reasonableness of the allowances made by referees for attorneys' fees, it would mean that it would have to pass upon the question in connection with almost every large bankruptcy matter and a great many of the small ones. To leave the question to the referees tends to create uniformity of charges and allowances, while to repass upon the question here and substitute the judgment of this court for

that of the referee would tend to create inequality and confusion. There is nothing more difficult nor embarrassing than to appraise the value of professional services. The appraisal must be based largely upon the personal opinion of the one who makes it. Even though an occasional injustice be done, the policy of the court must be to leave the determination of the question of the reasonable value of such services to the judgment of the referee.

For the foregoing reasons, the order of the referee is confirmed.