Lawrence J. **CORMIER**

v.

**ROWAN DRILLING COMPANY** et al.

Civ. A. No. 74–297.

United States District Court,
E. D. Louisiana.

Feb. 25, 1975.

under Rule 4(a) of the Federal Rules of Appellate Procedure. In order that the defendant may protect its right to appeal in the event these motions are determined adversely to it, the court has decided to rule upon them, at least in part, immediately.

Judgment was entered in this matter on January 30, 1975, against Rowan Drilling and in favor of the plaintiff. The judgment disposed of all claims in the lawsuit, except that the amount of costs and expenses for which Rowan Drilling would be liable to its co-defendant, Continental Oil Company, on a cross-claim was left open, to be determined by a Magistrate if the parties could not agree on an amount within 15 days. By a handwritten and initialed interlineation in the portion of the judgment dealing with plaintiff's claim, the court expressly found: "There is no just cause for delay and judgment is entered immediately." Counsel had been notified orally at the rendition of the jury verdict that this would be done and that the time for appeal would then commence because the court saw no reason to delay the plaintiff's suit because of the inter-defendant disputes.

Rule 59(b) provides that a new trial motion "shall be served not later than 10 days after the entry of the judgment." The jurisprudence is clear that the court has no authority to extend this time limit. See 6A Moore's Federal Practice ¶59.09[3]; 11 Wright & Miller, Federal Practice and Procedure § 2812, n. 49 at 83–84. In his motion for a new trial, counsel for the defendant certified that he served the motion on opposing counsel on February 12, 1975, several days after the time for service under Rule 59 ran out.

The defendant argues that the judgment entered was not a final judgment, and consequently did not trigger the time period for filing a new trial motion under Rule 59. He fails to note, however, that the rule of finality finds its

Michael J. Samanie, Gerald A. Bosworth, Houma, La., for plaintiff.

Ralph S. Johnson, George F. Riess, New Orleans, La., for intervenor.

Normann & Normann, David R. Normann, Deutsch, Kerrigan & Stiles, Christopher Tompkins, New Orleans, La., for Continental Oil Co.

Christovich & Kearney, Lawrence J. Ernst, New Orleans, La., for Rowan Drilling Co.

ALVIN B. RUBIN, District Judge.

The defendant Rowan Drilling Company has moved for a new trial and remittitur and also, in the event the court should find his new trial motion untimely, for an extension of the time to appeal

application and development in the law of appellate jurisdiction; it may be that a judgment that is interlocutory for purposes of appeal is nonetheless sufficient to invoke the Rule 59 time limits. The treatises seem to be silent on this issue, and it may be at least open to dispute. See 11 Wright & Miller, Federal Practice and Procedure § 2812; 6A Moore's Federal Practice ¶59.09.

■ I need not reach that issue here, because part of the judgment entered was an explicitly final judgment in favor of plaintiff and against Rowan Drilling for purposes of appeal and thus certainly a judgment final enough to invoke Rule 59(b). Rule 54(b) permits the court to enter final judgment against only some parties in a multiple party case when the court certifies that "there is no just reason for delay and upon an express direction for the entry of judgment." Here the court made the determination and the direction required. As to the plaintiff's claim against Rowan Drilling, the judgment was final.

■ More than ten days elapsed between entry of a judgment sufficient to invoke the time bar of Rule 59(b) and the defendant's service of his motion for a new trial on the plaintiff's attorney. The court has no discretion in the matter, and the motion must therefore be denied insofar as it seeks a new trial of plaintiff's claim against Rowan Drilling. For the same reasons, the motion for remittitur under Rule 59(e) is denied.

■ Perhaps in anticipation of this ruling, the defendant has also moved for an extension of time in which to file a notice of appeal. Rule 4(a) of the Federal Rules of Appellate Procedure permits the court to extend the time for appeal for not more than thirty days "upon a showing of excusable neglect." The Advisory Committee notes to the 1966 amendment of this rule indicate that such a motion should be granted only when the moving party failed to

learn of the entry of judgment, or "where injustice would otherwise result." 9 Moore's Federal Practice ¶ 204.13[12] at 969. The defendant here has made no showing that he failed to learn of the entry of judgment. Indeed he was advised by the court upon receipt of the verdict that judgment would be entered promptly. Since he still has time in which to file his notice of appeal, it is clear that no injustice would result from denial of the motion. The motion to extend the time for filing an appeal of the judgment against plaintiff is therefore denied.

In order to complete the record in this matter for appeal purposes, and in the event that I am wrong in concluding that the new trial motion is untimely, the parties shall proceed to brief and argue the merits of the defendant's motion for a new trial, which will be submitted on memoranda. The motion for a new trial with respect to the cross-claims will also be submitted on memoranda.

### On Post-Trial Motions

ALVIN B. RUBIN, District Judge:

In an attempt to avoid a verdict of $360,347.39 entered against it after a jury trial, the defendant Rowan Drilling Company has moved for judgment notwithstanding the verdict, for a new trial, and for a remittitur. It has also asked the court to reconsider its conclusion that Rowan Drilling owes indemnity for costs of defense to another defendant, Continental Oil Co. In a minute entry dated February 25, 1975, the court denied the motions for a new trial and for remittitur because they were not timely filed. In order to complete the record for appeal by addressing the merits of the motions, however, the court files this opinion dealing with the issues raised by each motion separately.

*Motion for Judgment N.O.V.*

■■ The defendant argues that the evidence shows conclusively that the

plaintiff was injured when he walked off a ramp leading from the drilling platform to the defendant's tender, and that he did so because he was daydreaming. There was substantial testimony to this effect, which the jury might well have credited. They chose not to, and instead looked to the evidence tending to impeach the testimony of the eyewitnesses called by the defendant and to other evidence that the steps of the ramp were covered by grease and mud. The court cannot enter a judgment contrary to the jury's verdict unless there was "a complete absence of any evidence to warrant submission to the jury" of the issue. Hampton v. Magnolia Towing Company, 5 Cir. 1964, 338 F.2d 303. There clearly was enough evidence on the issue of negligence to send that issue to the jury, and the court cannot substitute its evaluation of credibility for the jury's.

*Motion for a New Trial*

██ The defendant also argues that the evidence was insufficient in his motion for a new trial; it urges that the jury could not reasonably have found that the plaintiff was only 10% contributorily negligent. The court might well have reached a conclusion different from the jury's on the evidence adduced at trial, but that is not grounds for granting a new trial. The evidence with respect to the plaintiff's own conduct was disputed, and it is the jury's function to resolve such disputes. My own review of the evidence on this issue does not leave me with the "firm conviction that a mistake has been committed." C. Wright, Law of Federal Courts 420. See also Whiteman v. Pitrie, 5 Cir. 1955, 220 F.2d 914.

██ Counsel explains what he considers to be the jury's error by the fact that the issues of liability and damages were tried separately in this case, and that two days separated the trial of damages from the trial of liability. He concludes that, because of this recess and a further recess on Sunday, during the trial of damages, the jury must have forgotten the testimony of the eyewitnesses he called.

The question of division of issues, or, as it is sometimes called, bifurcation, was raised by the court at the pre-trial conference. The defendant did not object; indeed counsel for the defendant spoke in favor of this separation, deeming it, perhaps erroneously, in the interest of defendant to divorce sympathy for injuries from determination of liability. But the validity of this procedure has been repeatedly upheld. See Annotation, Separate Trial of Issues of Liability and Damages in Tort, 85 A.L.R.2d 9. See also LoCicero v. Humble Oil & Refining Co., E.D.La.1971, 52 F.R.D. 28. After liability was determined, trial of damages was set to the same jury to begin on a Saturday, partly because counsel thought this would take only one day, and partly because of the court's scheduling problems. The court had informed counsel well in advance of trial of its scheduling problems. The trial of damages took longer than anticipated. But again counsel did not object. The objections came only after the results were in, and they were not what was hoped for.

██ At any rate the liability issue was decided before the jury left the courthouse on Wednesday, including the issue of comparative negligence; presumably the eyewitness testimony was fresh in their minds. The testimony of the witnesses to the accident was no longer of major materiality to the issue of damages tried on Saturday and Monday. Courts frequently require juries to sit for weeks in complicated civil and criminal cases, sometimes without permitting them to take notes; the jury here had recollections as fresh as those of jurors in cases of that kind. To the extent that the jury's memory of Wednesday's testimony had dimmed by Saturday or Monday, it was counsel's duty to refresh their memory in closing argument.

The defendant raises other objections to the manner in which the trial was conducted, arguing that the verdict was infected by several procedures the court followed. The case was submitted to the jury on special interrogatories, and the defendant contends that this was error. To the extent that its argument rests on a general dislike of specificity in jury verdicts, it is of course unfounded. See Rule 49(a), F.R.C.P.; Bailey v. Kawasaki-Kisen K. K., 5 Cir. 1972, 455 F.2d 392, 394 n. 2. But the defendant also suggests that, by asking the jury to set out the amount of future wages lost and the period during which they would be lost, the court suggested to the jurors that they ought to find some wages lost, in a steady stream, for a long period of time.

The instructions given on the future lost wages issues cured, I believe, any problem that the form of the questions might create. More importantly, the court gave counsel for the defendant an opportunity to put the case to the jury on a general damages verdict. At the time of trial, the Fifth Circuit had before it an important case on the propriety of an instruction on inflation. Penrod v. Johnson Drilling Co., 510 F.2d 234, decided March 21, 1975. The court required that submission on a general verdict be accompanied by defendant's waiver of the inflation issue, in order to avoid the need for retrial if the court's instructions on the issue proved erroneous. Counsel did not wish to waive his right to contest that issue, and the case was accordingly submitted on special interrogatories. Regard for economy of costs to litigants, and of time and effort on the part of counsel and the court, and concern for the effective administration of justice dictated that the case be submitted to the jury in the manner in which it was.

The defendant also argues that the jury should not have been permitted to take a copy of the court's instructions with them to the jury room. Counsel suggests that a domineering juror might unduly emphasize some of the court's language and bend the other jurors to his will. Whether or not objection was timely made to this, I do not recall. I will deal with the issue as if the point had been preserved.

It is of course possible that the jury misconstrued the charge in this case; it is possible in any case, and counsel and the court seldom know just what the jury understood. Whatever our suspicions as lawyers and scholars may be about what really goes on in the jury room, the Constitution requires that we make a leap of faith: ordinary men and women are competent to decide important issues of fact in cases that have enormous consequences for the people involved. Once we accept this proposition, it would be absurd to argue that they should decide only on the basis of partial information and half-remembered instructions on the law. If we trust the jury at all, we must trust that they will attend the instruction to consider the charge as a whole. It cannot be error to attempt to give them a better chance to understand the whole charge.

More serious is the defendant's claim that the jury's copy of the charge was incorrect, in that it omitted some language requested by the defendant. The words omitted should have appeared at the bottom of page 10 of the charge on liability, and they would have qualified the instruction dealing with the plaintiff's right to be where he was. The court did give this charge orally, however, and the language the defendant sought to qualify was garbled by a typographical error. In any event, in context, the omission was not prejudicial.

The defendant also argues that the court conducted the trial in a manner generally hostile to the defense, and that the jury may have concluded from this hostility that the defendant was responsible for the plaintiff's accident. I have not had the benefit of a transcript at the time this was prepared, but I do not

believe that any remarks even remotely improper or hostile were addressed to defense counsel in the jury's presence, although he was in fact rebuked for lack of timeliness several times outside the jury's presence and then acknowledged his lack of compliance with the court's requirements. If, when the transcript is prepared, it reflects matters differently than my memory, I would appreciate counsel calling the appropriate parts of the record to my attention, and I will be glad to reconsider this opinion.

The Federal Rules of Civil Procedure are to be construed, they state, to secure the just, speedy and inexpensive determination of every action. This canon of construction may likewise be taken as a goal of the court and counsel. The federal courtroom is not a playing field for lawyers to enter when and with what gear may suit them, to play upon until they are tired, or until jury and judge are exhausted.

The trial of a lawsuit is not to be undertaken on the basis of preparation as the case proceeds, so that the end of trial comes only when briefcases are emptied and impromptu ingenuity exhausted. Nor are the time available to judges and jurors and the funds available to litigants so inexhaustible that counsel may draw a blank check on these for a trial of whatever length may develop.

This court therefore has the conviction that trials ought to be prepared in advance; that counsel owe a duty to seek the just, speedy and inexpensive determination of the action in which they are engaged; and that the court has the duty to attempt to exact efforts to these goals.

I am not aware that I harbored any animus toward defense counsel during the trial, or that I have any emotion now, unfavorable to the defendant or favorable to the plaintiff. I did repeatedly exhort the particular lawyer who appeared for the defendant to fulfill the obligations required by the court's pretrial order, which is uniform for all nine sections of the court, and not a capricious exercise by one judge. Defense counsel was chronically tardy in filing proposed jury charges, memoranda, objections to the court's proposed charge and in his other obligations, as he was with his motion for a new trial. He was admonished, not out of dislike or hostility, but because of what the court conceived its duty to be in the administration of justice. That lawyer is not a novice; he is experienced. As an officer of the court he owes the court not only compliance with its reasonable rules but something more than begrudging, belated compliance and habitual lack of punctuality. If any admonitions to counsel were delivered in the jury's presence, it was clear to the members of the jury that the court had no predilections toward one side or the other with regard to the outcome of the case, and that the defendant was not prejudiced by them.

■ The defendant also argues that the court erred in a number of evidentiary rulings. Counsel suggests that Dr. Fosberg should not have been permitted to testify, because his name was not added to the list of witnesses until the pretrial conference. At the conference, however, the names of several experts who might be potential defense witnesses in the same field were discussed. Although the time before trial was brief, there was nonetheless ample time for counsel to have consulted one of them. It is true that counsel might have had to work over the Christmas holidays in order to do this and the other preparation he had not completed, but there was a simple way to avoid that: prepare the other aspects of the case earlier.

■ Counsel challenges the court's refusal to admit some photographs he offered and to the court's receiving some other photographs offered by the plaintiff. If there was any error in these rulings, it was not prejudicial error, for the photographs were not very probative. Some of the photographs offered by the defendant were cumulative of impeach-

ment evidence he attempted to adduce; they showed the height of the handrails on the ramp and what the defense argued was the correct method of measuring them. The defendant's witness, Mr. Graham, testified about these matters, and the issue was thus clear to the jury. The other photographs excluded were excluded because the defendant failed to list them on his list of exhibits, after repeated written and oral instructions by the court to do so. The court's method of marshalling exhibits is the product of some thought. Even if it were less efficient than the method counsel proposed to follow, it was his duty to comply with the court's instructions. He simply incurred the consequences of non-compliance. Some of the plaintiff's photographs were admitted without authentication testimony, in accordance with the court's instructions on exhibits. Counsel's remedy was to follow the court's instructions for objecting, and this he failed to do.

■■ The defendant objects to the court's refusal to permit him to "demonstrate" in closing argument the way in which the steps from which Mr. Cormier fell would necessarily be clear of oil and safe by making a personal jump on a sample step in the courtroom. The court so ruled because counsel proposed to make a misleading demonstration: there was testimony that mud and dirt, as well as oil, were on the steps, the piece in the courtroom was only a fragment, it was clean and had not been demonstrated to be in "field condition," and the demonstration in a quiet courtroom would not have accurately reflected conditions as they were at the time of the accident— on the platform in the Gulf of Mexico.

■■ Finally, counsel objects to the court's failure to instruct the jury on the length of plaintiff's work-life expectancy. At the last moment, counsel could not agree on just how many years should be used; each party's expert had used a different number. The court instructed on work-life expectancy, and told the jurors to consult their own memories of the testimony to supply the figure. In this context, the failure to give a specific number could not have led the jury astray.

*Motion for Remittitur*

■■ The defendant asks that the jury's verdict be reduced for two reasons: they awarded the plaintiff lost wages for what the evidence showed to be the normal life expectancy of a male his age rather than for the work-life expectancy of such a male, and they awarded him more money each year than he had earned on the average in the years before his injury. The period of time over which the jury awarded lost wages was longer than the plaintiff's work-life expectancy, but the jury was entitled to find that this plaintiff was exceptional. Certainly the jury was not bound to limit future losses to the period measured by averages any more than they would have been required to make any lost earnings award run to this term. They might have found that he would be due lost wages for a period less than the average, say only 10 years, or, as they did, for a period longer than the average. The amount of money the jury found due each year was not unreasonable in the circumstances; they might well have found that this individual's wages would increase as he became more experienced in his trade. In any event, the jury's conclusion with respect to lost wages is not so unsupported by the evidence that remittitur is in order. Gorsalitz v. Olin Matheson, 5 Cir. 1970, 429 F.2d 1033; Glazer v. Glazer, E.D.La.1968, 278 F. Supp. 276.

*Motion for New Trial on Indemnity*

■■■ The defendant Rowan Drilling does not challenge the court's conclusion that Mr. Cormier was a borrowed servant of Rowan Drilling, so that the indemnity provisions of its contract with Continental Oil became operative. It urges instead that because Continental was not cast in judgment, it cannot re-

cover its costs of defense under the agreement, citing Loffland Brothers Co. v. Roberts, 5 Cir. 1967, 386 F.2d 540. *Loffland* is inapposite, however, because the contract at issue in that case expressly provided that there was no right of indemnity except where one of the parties was held liable to the other's employee. Here, there is no such limiting provision in the contract. The defendant also argues that Continental's defense was assumed by another company, the actual employer of Mr. Cormier. This factor may reduce the amount due Continental for costs of defense, a matter which has been referred to a magistrate, but it does not foreclose recovery.

For these reasons, and for the reasons stated in the minute entry of February 25, 1975, the motions of defendant Rowan Drilling Company are denied.