**In the Matter of AARON FERER & SONS CO., Debtor.**

**No. BK. 74-0-482.**

United States District Court,
D. Nebraska.

Feb. 28, 1977.

Robert F. Craig, Omaha, Neb., for appellant Max Schwartzman.

Ray R. Simon, Jerrold L. Strasheim, Omaha, Neb., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

Max Schwartzman and Sons, Inc., appeals from the memorandum and order of the bankruptcy court dated December 1, 1975, allowing counsel for Aaron Ferer and Sons Company, debtor-in-possession, attorney's fees in the amount of $244,505.00. Appel-

lant argues that the bankruptcy court erred in granting counsel for Aaron Ferer a rehearing on the attorney's fee issue and erred in granting excessive fees to counsel. This Court affirms.

On April 24, 1974, Aaron Ferer filed an original petition for arrangement pursuant to the provisions of Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701, *et seq.* Approximately sixteen and a half months later, on September 8, 1975, a plan of arrangement was confirmed by the bankruptcy court.

Throughout the Chapter XI proceedings Aaron Ferer was represented by the law firms of Venteicher & Strasheim and White, Lipp, Simon & Powers. On August 13, 1975, the law firms submitted to the bankruptcy court an application for allowance of attorney's fees. Venteicher & Strasheim requested $113,250.00 for 952.8 hours of legal services. White, Lipp, Simon & Powers requested $126,930.00 for 1,040.7 hours of legal services. These figures reflect a rate of $125.00 per hour for primary counsel and a somewhat lower hourly rate for a minor amount of time expended by other persons. The application was supported by itemized computer time records. On August 26, 1975, a consolidated hearing was held before the bankruptcy court with respect to the plan of arrangement and the application for attorney's fees. Jerrold L. Strasheim and Ray R. Simon, appearing on behalf of their respective law firms, testified in support of their application. No evidence against the fees was introduced at the hearing.

On October 1, 1975, the bankruptcy court entered a memorandum opinion and order effecting the allowance of fees and expenses. Venteicher & Strasheim were allowed $69,118.00.[1] White, Lipp, Simon & Powers were allowed $72,849.00. These amounts reflected a rate of $70.00 per hour.

Counsel for Aaron Ferer thereafter filed a timely motion for rehearing and reconsideration of the fee allowance. At the rehearing, additional evidence was present-

1. This amount took into account an additional 34.6 hours of legal service which was submitted to the bankruptcy court in a supplemental application.

ed to the bankruptcy court in support of the requested fees. On December 1, 1975, the bankruptcy court entered a memorandum opinion and order vacating in part its prior order of October 1, 1975, and allowing counsel the fees requested. The amounts allowed by the bankruptcy court were $117,575.00 for Venteicher & Strasheim and $126,930.00 for White, Lipp, Simon & Powers. Thus, the total allowance of attorney's fees was $244,505.00.

## I.

Appellant's first contention is that the bankruptcy court abused its discretion in granting counsel for Aaron Ferer a rehearing and in permitting the introduction of new evidence on the issue of attorney's fees. Appellant submits that the rehearing served only to relitigate the same issue previously decided by the bankruptcy court in its October 1, 1975, memorandum opinion and order.

■ Rule 923 of the Bankruptcy Rules[2] adopts Fed.R.Civ.P. 59 for rehearings in bankruptcy proceedings. Fed.R. Civ.P. 59(a) reads in pertinent part:

A new trial may be granted to all or any of the parties and on all or part of the issues * * * in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

A wide range of discretion rests with the trial court in the granting or the refusing of a new trial and appellate review of the ruling is very limited.

2. Rule 923 provides:
Except as provided in Rule 307, Rule 59 of the Federal Rules of Civil Procedure applies in bankruptcy cases.

A motion for a new trial is addressed to the sound discretion of the trial court and the action of the trial court should not be upset absent a strong showing of an abuse thereof.
*Sanden v. Mayo Clinic*, 495 F.2d 221, 226 (8th Cir. 1974). *See also* 6A J. Moore, *Moore's Federal Practice* Par. 59.05[5]; 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2803.

This Court finds no abuse of discretion. While it is true that a new trial will not lie merely to relitigate old matter, see 6A *Moore's Federal Practice, supra,* Paragraph 59.07, the motion for rehearing in the instant case was based on error of law.[3] It was, therefore, proper for the bankruptcy court to fully review the matter as well as receive additional testimony thereon.

## II.

Appellant's primary contention is that the allowance of attorney's fees to counsel for Aaron Ferer in the amount of $244,505.00 was excessive.

■ The original memorandum and order of the bankruptcy court allowed counsel for Aaron Ferer an attorney's fee "in accordance with their normal hourly rate and not for the rates applied for." Upon rehearing, the bankruptcy court found these fee allowances inadequate. The bankruptcy court set forth in a memorandum opinion its reasons for the increased fee allowances. The memorandum reads *in extenso*:

I believe my prior allowances to the attorneys for the debtor as debtor-in-possession are inappropriate because those allowances place too much emphasis on hours worked and hourly rates (the "time-clock" approach) and too little emphasis on other factors which are significant in this Chapter XI proceeding.

This Chapter XI proceeding was filed on April 24, 1974. The hearing on confir-

3. As discussed *infra*, this error was the failure of the bankruptcy court to give due weight and consideration to all legal criteria in determining the allowance of attorney's fees.

mation was held on August 26, 1975 and the order of confirmation was actually entered on September 8, 1975. The attorneys for the debtor undertook the proceeding without benefit of any retainer and have not to this date received any compensation for their services. I believe my prior allowances fail to take into account the significant impact the representation in this case had upon their ability to engage in other employment. From the beginning of the Chapter XI, the debtor was faced with bitter opposition from both its secured and unsecured creditors. That opposition required the attorneys for the debtor to spend enumerable hours keeping the debtor afloat. The devotion of this time by the attorneys for the debtor resulted in their inability to provide services to other existing and potential clients. That is an important consideration in fixing their fees.

Another factor to be considered is the contingent aspect of the possibility of compensation. If the attorneys for the debtor had been unsuccessful in obtaining confirmation, there is no doubt that this would be a factor in determining their compensation. Attorneys for debtors who unsuccessfully attempt to formulate an arrangement in general simply are not compensated as much as if an arrangement is confirmed. In addition, if this Chapter XI proceeding had resulted in adjudication instead of confirmation, any prospect of compensation for services rendered to the debtor would have to await liquidation of the debtor's assets and are subordinated to the costs and expenses of the liquidation. Section 64a(1).

The skill of the attorneys is also an important consideration. Not only did the attorneys deal skillfully with procedures and other matters involving bankruptcy law, they dealt with significant matters of taxation, Securities and Exchange Commission laws and requirements, and intricate matters of commercial law involving not only laws of the United States but questions of law involving the law of foreign countries.

That skill must be appropriately compensated. Particularly is that true when one considers the possibility that compensation is contingent and the long delay in obtaining compensation. I cannot justify compensating skillful attorneys who undertake representation of a Chapter XI debtor at an hourly rate which they could have earned on a more regular basis if they had declined representation of this particular debtor. These attorney's office overhead expenses continued during this Chapter XI proceeding even though no commensurate income was received by them.

The results obtained are also a factor to be considered. Some suggestion has been made that the results obtained for creditors is not large and, therefore, the attorney's compensation should be adjusted downward. By the nature of the debtor's confirmed plan, it is impossible to determine the exact amount of the payment to creditors. Projections made by the debtor in soliciting acceptance of its plan were necessarily conservative because financial data distributed to creditors had to pass Securities and Exchange Commission's scrutiny. There is evidence before me which would suggest that this conservative approach may be significantly exceeded. In addition, one of the major goals of Chapter XI is rehabilitation of the debtor. That is a significant result of the proceeding. A test of whether a proposed plan of arrangement may be confirmed is whether or not creditors will receive as much or more from the plan of arrangement as they would in regular bankruptcy. In my order of confirmation of plan, I found, based on evidence before me, that the plan was "for the best interests of the creditors" (the words of art which describe the foregoing test to confirmation). That order is long since final, there having been no appeal.

I do not mean to be understood to say that time spent is irrelevant in determining compensation. It must be considered. However, assuming that attorneys of the skill and competence of Mr. Strasheim

and Mr. Simon can produce in the neighborhood of thirteen to fourteen hundred billable hours a year, their fee applications would show that they have spent approximately one half of the last year and five to six months giving services to the debtor. This is a substantial amount of time away from their otherwise productive time.

In the final analysis, the fixing of compensation for attorneys is a matter of setting an amount which falls within a reasonable range. In consideration of the foregoing, I am unable to say that the fees applied for do not fall within that range. I will, therefore, enter an order setting aside the fees allowed the law firm of Venteicher and Strasheim and the fees allowed, White, Lipp, Simon and Powers and enter an order allowing them the fees for which they applied.

As a general rule, the findings of the bankruptcy court, particularly with regard to fee allowances, are entitled to and should be accorded great weight by the district court on review.

The referee's discretion and judgment, if free from error of law and sufficiently supported by evidence, is entitled to great weight * * *. Collier on Bankruptcy, 14th ed., sec. 62.12, pages 1481–1483. *In Re American Range & Foundry Co.,* D.C. Minn., 41 F.2d 845, 847, 7 Am.Bankr.Rep., N.S., 170, the judge said: " * * * it is not the business of this court to retry this question or to substitute its judgment for that of the referee, where there is nothing to show that he did not fairly pass on the question in view of the evidence before him, or that there is any mistake of law. * * * The business of fixing attorneys' fees in bankruptcy matters is one peculiarly for the referee. If this court should make it a practice to pass upon the question of the reasonableness of the allowances made by referees for attorneys' fees, it would mean that it would have to pass upon the question in connection with almost every large bankruptcy matter and a great many of the small ones. To leave the question to the referees tends to create uniformity of

charges and allowances, while to repass upon the question here and substitute the judgment of this court for that of the referee would tend to create inequality and confusion. There is nothing more difficult nor embarrassing than to appraise the value of professional services. The appraisal must be based largely upon the personal opinion of the one who makes it. Even though an occasional injustice be done, the policy of the court must be to leave the determination of the question of the reasonable value of such services to the judgment of the referee." See also *Matter of Melhado,* D.C.Pa., 1 F.Supp. 591, 21 Am.Bankr.Rep., N.S., 444; *In re Fineman,* D.C.Md., 32 F.Supp. 212, 42 Bankr.Rep., N.S., 566.

*In re Valentine,* 139 F.Supp. 576, 577 (D.Md.1956). *See also In re Midwest Engineering and Equipment Co.,* 440 F.2d 326, 328 (7th Cir. 1971); *In re Paramount Merrick, Inc.,* 252 F.2d 482 (2d Cir. 1958); *Miller v. Robinson,* 378 F.2d 2 (9th Cir. 1967); *In re Dole Co.,* 244 F.Supp. 751 (D.D.C.1965); *Tracy v. Spitzer-Rorick Trust & Savings Bank,* 12 F.2d 755 (8th Cir. 1926).

 Upon careful consideration of the record, this Court cannot say the fee allowance of the bankruptcy court was based on findings that are clearly erroneous. Nor does any error of law appear. The factors considered by the bankruptcy court are fully supported by the law. *See In re Paramount Merrick, Inc., supra,* 252 F.2d at 482; *Levin v. Barker,* 122 F.2d 969, 972 (8th Cir. 1941); *In re Detroit International Bridge Co.,* 111 F.2d 235, 237 (6th Cir. 1940). As noted by the Court in *Tracy v. Spitzer-Rorick Trust & Savings Bank, supra*:

Before an appellate court is warranted in holding that the sound judicial discretion resting in the trial court has been abused in the matter of fixing counsel fees, the evidence, including the testimony of experts, and the facts as to the nature of the work, the amount in controversy, are involved, the intricacy or novelty of the legal questions presented, the duration of the services, the ability of

counsel, and the results attained through the service rendered, ought to be such as to convince the court that the amount allowed nisi is manifestly insufficient or excessive. (Citations omitted.)

12 F.2d at 756–57.

This Court is convinced that the amount allowed here is not excessive and that the order of the bankruptcy court should be affirmed in all respects.

A separate order will be entered this day in accordance with this memorandum opinion.