**Gilbert Manley SPRING, Petitioner,**

v.

**Harry CALDWELL, Chief of Police, City of Houston, Felix M. Stanley, Presiding Judge of the Municipal Courts, City of Houston, Harris County, Texas, Respondents.**

Civ.A.No. H–79–2570.

United States District Court,
S. D. Texas,
Houston Division.

Aug. 31, 1981.

On Motion For Stay Sept. 17, 1981.

Wendell Odem, Schaffer & Lambright, J. Patrick Wiseman, Nelson & Mallett, Larry Sauer, Houston, Tex., for petitioner.

John Helm, Asst. City Atty., Legal Dept., City of Houston, Houston, Tex., for respondents.

Doug Becker, Asst. Atty. Gen., State of Texas, Austin, Tex., for intervenor.

## MEMORANDUM AND ORDER

SEALS, District Judge.

This action involves a petition for a federal writ of habeas corpus brought under 28 U.S.C. § 2241. On June 25, 1981, the Court entered its Memorandum and Order and Final Judgment in this case. 516 F.Supp. 1223. The Final Judgment included a declaration that Section 38.02 of the Texas Penal Code is unconstitutional. Presently before the Court are the Texas Attorney General's Motion to Intervene, under 28 U.S.C. § 2403(b) and Rule 24(a)(1), Fed.R. Civ.P., and Motion for a New Trial, under Rule 59, Fed.R.Civ.P. Also, before the Court is the respondents' Motion for a New Trial Under Rule 59.

## MOTION TO INTERVENE

■ On August 19, 1981, the Court held an evidentiary hearing to address the Texas Attorney General's Motion to Intervene.

Section 2403(b) reads in pertinent part as follows:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, *officer* or employee thereof *is not a party*, wherein the constitutionality of any statute of that State affecting the public interest is drawn into question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. ... (emphasis added).

The Statute requires the court to give notice to the attorney general only where the state or any agency, officer or employee thereof is not a party to the action.

Under Texas law a chief of police and police officers are "state officers." *Maryland Casualty Co. v. Rutherford*, 36 F.2d 226 (5th Cir. 1929); *Yett v. Cook*, 115 Tex. 175, 281 S.W. 837, 842 (1926); *Ex parte Tracey*, 93 S.W. 538, 540 (Tex.Cr.App. 1905). The Chief of Police for the City of Houston was a party in this action and therefore notice to the Attorney General of Texas was not required.

The Court's interpretation of Section 2403(b) is also consistent with the Statute's legislative intent as stated in the legislative history of the 1976 amendments to the Three Judge Court Act, Pub. Law 94–381. *See* [1976] U.S. Code Cong. & Ad. News 1988–2001.[1] There the Senate Report discusses the attributes that confer the status of "state officer" upon a particular official. A person is a state officer, even if s/he is a local official, if s/he performs a state function that embodies a policy of statewide concern. Whereas one who performs acts of purely local concern is not a state officer. S.Rep. No. 94–204, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S. Code Cong. & Ad. News 1988, 1992. This description of a state officer is followed by a citation to the case of *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935), which further elaborates on this designation.

In *Spielman*, the Court applied a two-prong approach to determine the application of the provision there in question. The Court looked to (1) the nature of the legislative action which is being attacked, and (2) the function of the officer who is sought to be restrained. Elaborating upon the first prong, the Court went on to state that "the reference is not to every legislative action, regardless of its nature and scope, but to a statute 'of general application' or an order of a state board or commission. Thus, the section does not apply to suits to restrain enforcement of municipal ordinances or the orders of a city board." *Spielman*, 295 U.S. at 94, 55 S.Ct. at 680.

---

**1.** Section 5 of the Act added Subsection (b) to Title 28 U.S.C. § 2403.

In addressing the second prong of the inquiry, regarding the function of the officer, the Court concluded that:

the suit must not only seek to have a state statute declared unconstitutional, or that in effect, but to restrain the action of an officer of the state. . . . *Where a statute embodies a policy of statewide concern, an officer, although chosen in a political subdivision and acting within that limited territory may be charged with the duty of enforcing the statute in the interest of the State and not simply in the interest of the locality where he serves.* . . . In the instant case it is manifest that the statute under attack attempted to establish a statewide policy, and not one merely in the interest of the particular county. The defendant is charged with the duty of enforcing the statute by prosecuting those who disobey it, and in performing that duty he acts not merely in the local interest but in the name of the people of the State in compelling observance of its laws. In that enforcement he is acting in a true sense as an officer of the state.

*Id.* at 94–95, 55 S.Ct. at 680–81 (emphasis added). Thus, it is clear that a police chief or police officer is both a "state officer" under Texas law and within the meaning of the statutory scheme of Section 2403(b). *Compare Sovereign News Co. v. Falke,* 448 F.Supp. 306, 314 n. 13 (N.D.Ohio 1977) *remanded on other grounds,* 610 F.2d 428 (6th Cir. 1979). (finding notice not required under Section 2403(b) where county prosecutor was a party and a state officer under Ohio law).

▮ Aside from the fact that one of the parties to this action was a state officer and therefore no notice was required under 28 U.S.C. § 2403(b), the Court finds that the Texas Attorney General's Office was informed of this action on or before August

12, 1980, approximately ten months before the Court entered its Final Judgment. The Court, as a result of conversations with respondents' counsel, the Assistant City Attorney, during the pendency of this action, was under the impression that the Texas Attorney General's Office did not wish to participate in this case.

At the evidentiary hearing held on August 19, 1981, to address the Texas Attorney General's Motion to Intervene, the Court asked Mr. John Helm, Assistant City Attorney for the City of Houston, whether he had notified the Texas Attorney General's Office of the pendency of this action and had advised them that the constitutionality of a State statute had been called into question. Mr. Helm testified, that on August 12, 1980, he telephoned Ms. Nancy Simonson,[2] Assistant Attorney General for the State of Texas, and informed her of the pendency of this case and the constitutional attack upon Section 38.02. Mr. Helm further testified that Ms. Simonson requested that he send her a copy of his case file. On August 13, 1980, Mr. Helm sent Ms. Simonson a copy of his file, as requested, along with a cover letter reiterating his position that the state might wish to appear in this case[3] because of the constitutional attack upon a state statute. (Attorney General's Motion to Intervene, Petitioner's Exhibits 1 and 2).

The Court accepts Mr. Helm's testimony that he telephoned Ms. Simonson or another female attorney at the Texas Attorney General's Office on August 12, 1980, notifying the Office of the pendency of this case involving the constitutionality of a State penal statute. The Court further accepts Mr. Helm's testimony that he sent a copy of his file in this case together with his letter of August 13, 1980, to the Texas Attorney General's Office to ascertain whether the State desired to appear in this action.

---

**2.** Although Ms. Simonson was present at the hearing held on August 19, 1981, neither side chose to call her to testify. However, Mr. Douglas Becker, Assistant Attorney General for the State of Texas, stated that Ms. Simonson had no recollection of the telephone conversation with Mr. Helm on August 12, 1980.

**3.** The State maintains that they never received this correspondence from Mr. Helm and that perhaps it was lost in the mail.

Thus, the Court concludes that the Texas Attorney General's Office had been informed of the pendency of this case at least ten months prior to the entry of the Court's Final Judgment.

## MOTIONS FOR NEW TRIAL

■ Also before the Court are the Texas Attorney General's Motion for a New Trial and respondents' Motion for a New Trial. The Court is now of the opinion, in view of the foregoing, that the State's Motion for a New Trial is moot. Additionally, the State had actual notice of the entry of the Court's Final Judgment in this case on June 26, 1981.[4]

Rule 59(b), Fed.R.Civ.P., provides that a motion for a new trial "shall be served not later than ten days after the entry of the judgment." It is clear that the Court has no authority to extend this time limit. *Cormier v. Rowan Drilling Co.*, 67 F.R.D. 102 (E.D.La.1975), *aff'd*, 549 F.2d 963 (5th Cir. 1977). The Attorney General's Motion for a New Trial was served on July 6, 1981, more than ten days after the entry of the Court's Final Judgment. Also, respondents' Motion for a New Trial was served on July 6, 1981, more than ten days from the date of the entry of the Court's Final Judgment. Thus, both the Texas Attorney General's and the respondents' Motions for a New Trial must be denied.

## APODACA v. TEXAS

The Court feels compelled to address one of the issues raised by the Texas Attorney General in his Motion for a New Trial. The Attorney General argues with great force that this Court must uphold the constitutionality of Section 38.02 because the Supreme Court of the United States has recently done so in the case of *Texas v. Apodaca, County Court at Law No. Two, El Paso County, Texas, app. dism'd*, 1979, 444 U.S. 987, 100 S.Ct. 516, 62 L.Ed.2d 417. In *Apodaca*, the Court summarily dismissed, for want of a substantial federal question,

an appeal from the judgment of the County Court at Law for El Paso, Texas, challenging a conviction under Section 38.02.

■ The precedential effect of summary affirmances and dismissals for want of a substantial federal question by the Supreme Court extends no farther than "the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977). "A summary disposition affirms only the judgment of the court below, and no more may be read into [the Court's] action than was essential to sustain that judgment. Questions which 'merely lurk in the record,' are not resolved, and no resolution of them may be inferred." *Illinois Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 182–83, 99 S.Ct. 983, 989–90, 59 L.Ed.2d 230 (1979) *quoting Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) (citations omitted).

■ The questions posed in *Apodaca* in no way address the issues presented in this case. It is strange indeed that the Texas Attorney General argues for the application of the summary dismissal in *Apodaca* on the facts presented in this case. It is quite clear that the Attorney General appreciated the distinction between the posture of the constitutional attack asserted in *Apodaca* and the challenge presented here.

In his motion to the Supreme Court to dismiss or affirm for want of a substantial federal question, the Attorney General argued in *Apodaca* as follows:

The posture of the case before this Court is such that no arguable meritorious attack on the statute is squarely presented and, therefore, the appeal should be dismissed for lack of a substantial federal question.

Insofar as Apodaca argues that Section 38.02(a) violates the Fourth Amendment because it permits police officers to make pretextural arrests in the hopes of finding incriminating evidence of more sub-

---

4. At the hearing held on August 19, 1981, Mr. Helm testified that he received a telephone call regarding this case from Mr. Douglas Becker, Assistant Attorney General for the State of Texas, the day after the Court entered its Final Judgment.

stantial crimes in the ensuing search incident to arrest *or with the aim of forcing the arrested person to choose which of his constitutional rights to assert it can only be remarked that that situation, which might raise a substantial federal question if squarely presented, is not presented here. . . . In this case, Apodaca had already been arrested for one crime and charged with an additional crime before the officers decided to charge him with a violation of Section 38.02(a). . . . There was no incursion upon any of Mr. Apodaca's privacy rights protected by the Fourth Amendment, since he not only had been lawfully stopped but had been lawfully arrested on two other criminal charges prior to his being charged under Section 38.02(a).*

(Motion to Dismiss or Affirm in *Apodaca* at 8–10) (emphasis added).

Precisely the situation which the Attorney General argued did not exist in *Apodaca,* and which he admits might raise a substantial . federal question if squarely presented, is presented in this case. Petitioner Spring was forced to choose which of his constitutional rights to forego when he was stopped merely on the basis of "suspicion." [5]

The constitutionally offensive conduct authorized by the Statute is that it sanctions arrest for refusal to identify where an individual is stopped merely on the basis of "reasonable suspicion," as was petitioner in this case. Of course, where a person is arrested on the basis of probable cause that he has committed another crime, as in *Apodaca,* and after a lawful arrest refuses to identify himself, quite a different constitutional situation is presented.

The County Court judge who denied Apodaca's motion to set aside his complaint also appreciated this distinction. In his Memorandum Opinion Judge Fashing wrote:

This case does not present the question answered in *Brown v. Texas,* [443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357] *supra,* nor does it present the question left unanswered [6] by footnote 3 in *Brown v. Texas.* [This] case poses the first of these two related questions. (1) May ·an individual be punished for refusal to identify himself when such refusal to identify comes after the defendant is under lawful traditional arrest for another crime which arrest satisfies Fourth Amendment requirements?

(*Texas v. Apodaca,* Memorandum Opinion at 1–2.)

A summary dismissal of an appeal merely expresses the view that the judgment appealed from was correct regarding the federal questions raised that were necessary to the decision. *Washington v. Yakima Indian Nation,* 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979). The precedential significance of the summary action must be viewed in light of the facts of the particular case which was the subject of the summary action. Where the facts involved in the case being reviewed are distinguishable, the summary action does not mandate the same result. *Bradley,* 432 U.S. at 177, 97 S.Ct. at 2241.

The summary dismissal in *Apodaca* cannot be viewed as a blanket reversal of repeated pronouncements by the Court proscribing the conduct authorized by Section 38.02 and presented in this case.[7] The

---

**5.** Petitioner Spring was also charged with aiding and abetting prostitution. However, that charge was made *subsequent* to his arrest under Section 38.02, and it is clear from the testimony at his trial in County Court that petitioner's arrest was the result of his failure to respond to the officer's questioning concerning his name and address.

**6.** The so-called unanswered question in *Brown,* i. e. whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop, was indeed tacitly

answered by the Court's reference in *Brown* to the precise portions of *Terry v. Ohio,* 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968) (White, J., concurring) and *Dunaway v. New York,* 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979) proscribing such action.

**7.** The case *sub judice* presents the question of whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop. The question posed in *Apodaca* was whether an individual may be

Court's action in *Apodaca* must be viewed in the factual posture presented in that case. A summary dismissal or affirmance *"should not be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved."* *Bradley*, 432 U.S. at 176, 97 S.Ct. at 2240 (emphasis added). *See also Pollard v. Cockrell*, 578 F.2d 1002, 1010–11 (5th Cir. 1978); *Plante v. Gonzalez*, 575 F.2d 1119, 1125–26 (5th Cir. 1978). *Cf. Ensley Branch of NAACP v. Seibels*, 616 F.2d 812, 819 n. 17 (5th Cir. 1980) (holding, *inter alia*, summary affirmance inapplicable due to factual distinction). Thus, the Court concludes that the Attorney General's reliance on the summary dismissal in *Apodaca* as controlling in this case is clearly misplaced.

For the above stated reasons, the Court hereby ORDERS:

The Texas Attorney General's Motion to Intervene is DENIED.

The Texas Attorney General's Motion for a New Trial is DENIED.

The respondents' Motion for a New Trial is DENIED.

The Clerk shall file this Memorandum and Order and shall provide counsel for all parties with a true copy.

## ON MOTION FOR STAY

This action involves a petition for writ of habeas corpus brought under 28 U.S.C. § 2241. The Court entered its Memorandum and Order and Final Judgment herein on June 25, 1981, at which time it declared Section 38.02 of the Texas Penal Code unconstitutional. By Memorandum and Order filed on August 31, 1981, the Court denied the respondents' Motion for a New Trial, as well as the Motion to Intervene and Motion for a New Trial filed by the Texas Attorney General. On September 9, 1981, the respondents and the Texas Attorney General filed motions for stay of the Court's judgment pending appeal. They also asked that the Court expedite its consideration of their motions. The Court has considered these

motions as soon as it was able to do so. However, for the reasons set forth below, the Court does not believe that its judgment should be stayed pending appeal of its decision.

Rule 8(a) of the Federal Rules of Appellate Procedure provides for the granting of stays of judgment pending appeal. For movants to be granted such a stay, however, they recognize that they would have to demonstrate the probability of success upon appeal; that a substantial threat exists that the State will suffer irreparable harm in the absence of the stay; that such potential injury outweighs possible harm to the petitioner; and that the stay is in the public interest. However, movants have not shown any likelihood of success on the merits of the appeal. As has been discussed in the Court's Memorandum and Order of August 31, 1981, the precise issues presented in this action have not been considered by the Supreme Court either in *Apodaca v. Texas*, 444 U.S. 987, 100 S.Ct. 516, 62 L.Ed.2d 417 (1979), or *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Movants also have not demonstrated that the other relevant factors favor their position so strongly that a stay of the Court's judgment is warranted.

The motions for stay of judgment raise another issue which the Court must now address. On July 8, 1981, the respondents and the Texas Attorney General filed motions for a new trial. These motions were denied by Memorandum and Order of August 31, 1981, because the Court stated that they had not been "served not later than 10 days after entry of the judgment" on June 25, 1981, as required by Rule 59(b), Fed.R. Civ.P. The Court also noted that the Texas Attorney General's motion for a new trial was moot in light of the Court's treatment of his motion to intervene, as set forth in the Memorandum and Order of August 31, 1981. In their motions for stay of judgment, the respondents and the Texas Attorney General correctly contend that their motions for a new trial were timely because

punished for refusing to identify himself when such refusal comes after the person is under

lawful arrest for another crime which arrest satisfies fourth amendment requirements.

July 5, 1981, the tenth day following the entry of judgment, fell on a Sunday. Therefore under Rule 6(a), Fed.R.Civ.P., the time period was extended until the end of the next day; and Monday, July 6, 1981, was the date on which the motions were served. Thus, the Court miscalculated the time involved in the service of the motions for a new trial. This error does not warrant modification or rescission of the Court's prior ruling denying the Texas Attorney General's motion for a new trial, since the Court determined that it also was moot. The respondents' Motion for a new trial, however, was not denied on the alternate ground of mootness. Therefore, it must now be reviewed so that the Court can determine whether the respondents should be granted a new trial.

Respondents urge that a new trial is necessary because (1) Section 38.02 of the Texas Penal Code has "withst(ood) constitutional analysis" by the Supreme Court; (2) the petitioner has deliberately bypassed available state remedies; and (3) the doctrine of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precludes this Court's consideration of the petitioner's Fourth Amendment claim. These contentions have been considered, and rejected, by the Court in its Memorandum and Order of June 25, 1981, and the Supreme Court's alleged upholding of the constitutionality of the statute in question also has been addressed at length in the Court's Memorandum and Order of August 31, 1981. The respondents' motion sets forth no instances of improperly admitted or excluded evidence during the trial of this action, newly-discovered evidence that might affect the Court's decision in this case, or any other reason that would justify the granting of a new trial. *See generally* 6A J. Moore, *Federal Practice* ¶¶ 59.05, 59.07, 59.12. A new trial will not be granted merely to relitigate old matter. *Matter of Aaron Ferer & Sons Co.*, 427 F.Supp. 350, 352 (D.Neb.1977). Thus, the Court's denial of the respondents' motion for a new trial will not be rescinded or modified.

Accordingly, it is hereby ORDERED that:

1. The respondents' and the Texas Attorney General's Motion for Expedited Consideration are GRANTED.

2. The respondents' and the Texas Attorney General's Motion for Stay of Judgment are DENIED.

The Clerk will file this Order and provide counsel for all parties with a true copy.