## COLE ᴇᴛ ᴀʟ. *v.* ARKANSAS.

No. 62.   Argued November 9, 1949.—Decided December 5, 1949.

*Thomas E. Harris* argued the cause for petitioners. With him on the brief was *Arthur J. Goldberg.*

*Jeff Duty,* Assistant Attorney General of Arkansas, argued the cause for respondent. With him on the brief were *Ike Murry,* Attorney General, and *Wyatt Cleveland Holland,* Assistant Attorney General.

MR. JUSTICE JACKSON delivered the opinion of the Court.

In December 1945, 112 of the 117 employees of an oil company, including petitioners, went out on strike. About five o'clock one afternoon, petitioners, with several other strikers, assembled near the plant's entrance. Although a picket line was nearby, these men were not a part of it, and there is no suggestion that their acts were attributable either to the regular pickets or to the union representing them. As the five working employees left the plant for the day, the petitioner Jones called out to one named Williams to "wait a minute, he wanted to talk to him." When Williams replied that "he didn't have time, he was on his way home and he would see him another day," petitioner Jones gave a signal and said, "Come on, boys." Petitioner Cole, who was carrying a stick, told one of the other departing employees "to go ahead on, that they wasn't after me." Another striker named Campbell then attacked Williams and was killed in the ensuing struggle. It was further testified that these petitioners and others had that morning discussed talking to the men who were working "and they agreed that if they didn't talk right, they were going to whip them." While some of this was contradicted, such is the version which the jury could have found from the evidence.

The present case has had a curiously involved history. Convicted in 1946 of a statutory offense for their participation in the foregoing, petitioners secured a reversal in the Supreme Court of Arkansas for errors in the trial. 210 Ark. 433, 196 S. W. 2d 582. Following the retrial,

petitioners' second conviction was affirmed, 211 Ark. 836, 202 S. W. 2d 770; and we granted certiorari and reversed on the ground that the affirmance below had been based upon a section of the statute other than that for violation of which these petitioners had been tried and convicted. *Cole* v. *Arkansas,* 333 U. S. 196.[1] On remand, the State Supreme Court has reconsidered the appeal and has again affirmed in an opinion sustaining the convictions under the section of the statute on which the prosecution was based. 214 Ark. 387, 216 S. W. 2d 402. Doubts as to whether the mandate in our earlier decision had been obeyed led us to grant certiorari. 337 U. S. 929.

It appears on the surface, at least, that the Supreme Court of Arkansas has attempted to comply with our mandate and has now placed its affirmance upon the same section of the statute as that upon which the trial court

---

[1] Act 193, Acts of Arkansas 1943, provides in pertinent part:

"Section 1. It shall be unlawful for any person by the use of force or violence, or threat of the use of force or violence, to prevent or attempt to prevent any person from engaging in any lawful vocation within this State. . . .

"Section 2. It shall be unlawful for any person acting in concert with one or more other persons, to assemble at or near any place where a 'labor dispute' exists and by force or violence prevent or attempt to prevent any person from engaging in any lawful vocation, or for any person acting either by himself, or as a member of any group or organization or acting in concert with one or more other persons, to promote, encourage or aid any such unlawful assemblage. . . ."

The Supreme Court of Arkansas had affirmed the petitioners' convictions on the basis of § 1 of the above statute, although, as we observed, both the information drawn against the petitioners and the charge to the jury referred in unmistakable terms to a violation, not of § 1, but of § 2. Accordingly we reversed, holding it a violation of due process for the appellate court to appraise and affirm petitioners' convictions on considerations other than those governing the case as it was tried and as the issues were determined in the trial court.

submitted the case to the jury. The objection to this affirmance is, however, much more subtle and far-reaching than that involved in our previous decision. There it was clear that the Arkansas Supreme Court's affirmance was based upon an entirely different statutory offense from that charged and under which the case was submitted to the jury. It is now claimed that, although they both dealt with the same section of the Act involved, the trial court and the appellate court adopted contrasting interpretations of that section, and that the result was a repetition of the earlier error.

In addition to this contention, that the previous error has been repeated, it is also claimed that the statute now involved violates the Federal Constitution in that it abridges freedom of speech and assembly, and that the charge and statute are too vague and indefinite to conform to due process. All three claims involve serious charges of error, and if any one can be supported, petitioners are entitled to prevail.

Section 2 of Act 193, Acts of Arkansas 1943, provides:

> "It shall be unlawful for any person acting in concert with one or more other persons, to assemble at or near any place where a 'labor dispute' exists and by force or violence prevent or attempt to prevent any person from engaging in any lawful vocation, *or for any person acting either by himself, or as a member of any group or organization or acting in concert with one or more other persons, to promote, encourage or aid any such unlawful assemblage. . . ."* (Italics supplied.)

In the opinion under review, the Supreme Court of Arkansas has indicated that as to one charged with a violation of the italicized portion, the statute requires that the accused aid the assemblage with the intention that force and violence would be used to prevent a person

from working. Petitioners' quarrel, however, is not with this construction. Instead, petitioners contend that in the trial court, as the statute was construed and as the case was submitted to the jury, their convictions rested upon the theory that no more was required than mere presence in a group where unplanned and unconcerted violence was precipitated by another. The requirements of knowledge and intent, they claim, were "read into" the statute for the first time by the appellate court on review, and were absent in the trial court.

It thus becomes apparent that underlying each of the three contentions advanced on behalf of these petitioners is the basic premise that their case was submitted to the jury on the theory that nothing more was needed to convict them than mere presence at an assemblage where violence occurred without their participation, concert, or previous knowledge. This is the foundation, not only of the claim that the trial court and the appellate court adopted contrasting interpretations of the Act they are said to have violated, but also of the claim that application of that Act offends the fundamental rights of speech and assembly protected from state deprivation by the Fourteenth Amendment. Similarly the alleged difference between the trial court and the appellate court in rendering the Act is the basis of the argument that it is constitutionally invalid for vagueness, it being contended here that in this very case the Act has been demonstrated to be susceptible of at least two different interpretations in the Arkansas courts.

Did the trial court authorize the jury to convict for mere presence in an assemblage where unplanned and unintended violence occurred? This is the basis of the plea for reversal and we turn to the record to ascertain whether or not it is justified.

The information on which the petitioners were tried set forth that Campbell in concert with others had assembled

at the plant where a labor dispute existed and by force and violence prevented Williams from engaging in a lawful vocation. It then charged that "The said Roy Cole [and] Louis Jones . . . did unlawfully and feloniously, acting in concert with each other, promote, encourage and aid such unlawful assemblage, against the peace and dignity of the State of Arkansas." [2]

As we have noted in *Cole* v. *Arkansas, supra,* 198, the language employed in the information is substantially identical with that of § 2 of the Arkansas Act.

In explaining the Act, which was read to the jury, the trial court said that it included two offenses, ". . . First, the concert of action between two or more persons resulting in the prevention of a person by means of force and violence from engaging in a lawful vocation. And, second, in promoting, encouraging or aiding of such unlawful assemblage by concert of action among the defendants as is charged in the information here. The latter offense is the one on trial in this case."

In his second instruction, the trial court charged that ". . . if you further believe beyond a reasonable doubt that the defendants wilfully, unlawfully and feloniously,

---

[2] The entire information was as follows: "Comes Sam Robinson, Prosecuting Attorney within and for Pulaski County, Arkansas, and in the name, by the authority, and on behalf of the State of Arkansas information gives accusing Roy Cole, Louis Jones and Jessie Bean of the crime of felony, committed as follows to-wit: On the 26th day of December, A. D. 1945, in Pulaski County, Arkansas, Walter Ted Campbell, acting in concert with other persons, assembled at the Southern Cotton Oil Company's plant in Pulaski County, Arkansas, where a labor dispute existed, and by force and violence prevented Otha Williams from engaging in a lawful vocation. The said Roy Cole, Louis Jones and Jessie Bean, in the County and State aforesaid, on the 26th day of December, 1945, did unlawfully and feloniously, acting in concert with each other, promote, encourage and aid such unlawful assemblage, against the peace and dignity of the State of Arkansas."

which [while] acting in concert with each other, promoted, encouraged and aided such unlawful assemblage, you will convict the defendants as charged in the indictment."

Needless to say, the defendants presented no request for a charge that would construe the statute as unfavorable to themselves as they now contend it was construed. To the contrary, an opposite construction was embodied in the defendants' requests to charge, all of which, with minor variations, were granted save one which duplicated a charge earlier made by the court. The ninth instruction requested by the defendants and granted by the court, said: "The court instructs you that mere fact, if you find it to be a fact that the defendants, or either of them, were present at the time of an altercation between Campbell and Williams, such fact alone would not justify you in finding the defendants or either of them guilty."

But it is contended that some portions of the opinion of the Supreme Court of Arkansas apparently "read into" the statute the requirement that the accused "promoted, encouraged and aided the assemblage—which was unlawful because of its purpose and its accomplished results," and that it sustained the convictions upon a conclusion from the evidence that "the defendants participated, aided, encouraged and abetted in an agreement with others to the effect that the workers . . . would be whipped if they did not agree to quit work." Petitioners argue that this requirement of purpose and knowledge was supplied as an additional element by the appellate court, and that in so doing that court departed even further from the construction of the trial court. But the question was before the jury in almost the very language petitioners object to as originating in the State Supreme Court. "You are instructed," said the trial court in giving a charge requested by these petitioners, "that before the defendants, or either of them can be convicted in this

case, you must be convinced beyond a reasonable doubt that they promoted, encouraged, and aided in an unlawful assemblage at the plant of the Southern Cotton Oil Company, for the purpose of preventing Otha Williams from engaging in a lawful vocation."

We do not find any such disparity between the instructions and the opinion of the Supreme Court as is suggested. At most, the appellate court spelled out what is implicit in the instructions of the trial court, and both were agreed that the statute authorized no conviction for a mere presence in an assemblage at which unplanned and unconcerted violence was precipitated by another.

What we have already said disposes of the contention that this Act as applied to petitioners abridges freedom of assembly. For this argument, too, rests on the assumption that this Act penalizes for mere presence in a gathering where violence occurs. As we have pointed out, the statutory text does not so read, the charge of the trial court expressly negatived this construction at the defendants' own request, and they themselves have complained of the appellate court that it went even further in this direction.

Accordingly, we are not called upon to decide whether a state has power to incriminate by his mere presence an innocent member of a group when some individual without his encouragement or concert commits an act of violence. It will be time enough to review such a question as that when it is asked by one who occupies such a status. Evidently these petitioners, in the minds of the jury, at least, did not.[3] For, as we have seen, the case was submitted under a statutory construction

---

[3] One witness, whom the jury was entitled to believe, testified as follows:

"Q. You say you were down at the tent that morning?

"A. Yes, sir.

"Q. When these defendants here, Louis Jones and the others, were

and charge which forbade conviction without belief that the petitioners aided the assemblage "for the purpose of preventing Otha Williams from engaging in a lawful vocation."

As defined by the Arkansas Supreme Court, an unlawful assembly, the aiding of which is prohibited, is ". . . one where persons acting in concert have assembled in an attempt to prevent by force or violence some other person from engaging in a lawful occupation."

Certainly the Act before us does not penalize the promotion, encouragement, or furtherance of peaceful assembly at or near any place where a labor dispute exists, nor does it infringe the right of expression of views in any labor dispute.

Quite another question is involved when one is convicted of promoting, encouraging and aiding an assemblage the purpose of which is to wreak violence. Such an assemblage has been denominated unlawful by the Arkansas legislature, and it is no abridgment of free speech or assembly for the criminal sanctions of the state

---

in a discussion and were talking about talking to the men that were working?

"A. Yes, sir.

"Q. And they agreed that if they didn't talk right, they were going to whip them?

"A. Yes, sir."

Facts demonstrating the consummation of this plan were given to the jury by the testimony of another witness. As the men not on strike were leaving the plant, petitioner Jones, according to the witness, called upon Williams ". . . to wait a minute, he wanted to talk to him, and Otha told him he didn't have time, he was on his way home and he would see him another day.

"Q. Did he do anything else?

"A. He gave a signal and said 'Come on, boys.' . . .

"Q. What happened after Louis Jones gave the signal and said 'Come on, boys'?

"A. They flew up like blackbirds and came fighting."

to fasten themselves upon one who has actively and consciously assisted therein.

Similarly we find no merit in petitioners' contention that the Arkansas statute is unconstitutionally vague, so that its application in this case violated due process of law. Here again the premise upon which the argument is presented to us is that the two Arkansas courts differed in construing the statute, and we are asked to conclude from this fact that the test of definiteness which criminal statutes must meet under the due process clause, *International Harvester Co.* v. *Kentucky*, 234 U. S. 216, 223, has not been met. Since we cannot assume that the two courts were at odds in their interpretation of the statute, we find it unnecessary to explore the question as to whether such discrepancy, if it existed, would constitute a basis for concluding that the constitutional standards have not been achieved. We think that § 2, Act 193, Acts of Arkansas 1943, fairly apprises men of ordinary intelligence that for two or more to assemble and by force or violence prevent or attempt to prevent another from engaging in any lawful vocation constitutes an unlawful assemblage, and that the promotion, encouragement or aiding thereof is unlawful.

*Judgment affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.