**STATE of Minnesota Respondent,**

v.

**James Gene WHITEHEAD, Appellant.**

**No. C7–89–1769.**

Court of Appeals of Minnesota.

July 17, 1990.

Review Denied Sept. 14, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Eileen Wells, Mankato City Atty., Gregory James Anderson, James Keeler, Asst. City Attys., Mankato, for respondent.

Samuel A. McCloud, Dean S. Grau, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and CRIPPEN and SHORT, JJ.

## OPINION

CRIPPEN, Judge.

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) renders inadmissible in a criminal case any incriminating statements produced by custodial interrogation unless steps are taken to give the defendant advice on constitutional rights of silence and the assistance of counsel. Appellant was given an implied con-

sent advisory without first being informed of these rights and was denied his repeated claim of a right to consult with an attorney. This appeal requires a determination whether the advisory conversation, demonstrated here by a video recording and its accompanying soundtrack, includes any inadmissible statements under *Miranda.* The trial court refused to suppress the audio portion of the recording and we affirm.

## FACTS

Mankato police officer Wayne Hoffman arrested appellant James Whitehead after finding him behind the wheel of a car that had skidded across an intersection and hit a semaphore pole. The officer smelled alcohol near appellant, and appellant was very uncooperative. An implied consent advisory subsequently transpired at the Mankato law enforcement center. Testing of a blood sample taken later from appellant showed a .17 alcohol concentration. In accordance with prevailing law and practice, the implied consent interview did not include advice to appellant on his rights to be silent and to consult with an attorney.

Whitehead appeals the conviction which followed a jury verdict that he was guilty of driving while under the influence of alcohol and driving with an alcohol concentration of .10 or more. Minn.Stat. § 169.121, subds. 1(a), (d) and (e) (1988). Evidence at trial included a showing of the video recording of the conversation between appellant and Hoffman during the implied consent advisory. In a pre-trial order, the trial court denied appellant's motion to suppress the audio portion of the recording; citing caselaw on admissibility of evidence that testing was permitted or refused,[1] the court observed that *Miranda* advice has not been required in connection with implied consent advisories. During trial the court further determined appellant

could not testify as to why he failed to obtain an independent alcohol concentration test.

The advisory interview here began with the officer observing, "Sure got tired all of a sudden, didn't ya?" Appellant responded with an obscene curse. The officer then began reading a written advisory, first stating his belief that appellant had driven while under the influence, and adding a statement that Minnesota law required appellant to take a test to determine if he was in this condition. Thereupon, the officer asked appellant to say whether he understood what the officer had said; he made the same inquiry on nine other occasions during the interview, along with extensive discussions on what appellant understood and what the officer was saying. Appellant and the officer each made over 100 statements or inquiries during the conversation. Three times during the interview the officer said that appellant had the right, subsequent to submitting to a test, to have additional tests made by a person of his choosing.

After being asked if he would take a breath test, appellant indicated he needed legal advice to make a decision. In an earlier portion of the advisory, the officer informed appellant he had "a right to consult with an attorney" but only "after submitting to testing." Having once stated his need for legal advice, the conversation repeatedly turned to appellant's opinion that he should be permitted to talk to a lawyer, an observation he stated approximately ten times. In these and other comments during the conversation, appellant repeatedly used the obscene expression stated in his first comment during the interview.

The advisory was further prolonged after appellant asked to go to the bathroom and the officer refused permission, explaining that appellant had to decide first

---

1. *State v. Gross,* 335 N.W.2d 509 (Minn.1983) (right to remain silent) and *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512 (Minn. 1985) (right to consult with counsel) establish that there is no wrongful interrogation when an officer elicits through an implied consent advisory a driver's decision either to permit or refuse

chemical testing. In *South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983), the United States Supreme Court likewise announced that inquiry of "whether the suspect will take a blood-alcohol test" is not an interrogation for purposes of *Miranda.*

whether he would give a urine or a blood sample. Although the officer first requested a breath test, he ultimately explained that the breath testing machine at the center was not working.

## ISSUES

1. Did the trial court err in failing to suppress the audio portion of a film showing appellant in the presence of Officer Hoffman during the course of an implied consent advisory?

2. Does the record support appellant's contention that the police officer wrongfully obstructed appellant's freedom to arrange for taking an additional chemical test?

## ANALYSIS

### 1. Advisory recording.

As now more clearly enunciated in *Pennsylvania v. Muniz*, —— U.S. ——, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), which we elect to apply here,[2] the effect of *Miranda* on implied consent advisory conversations produces six principles:

■ a. It is not interrogation to provide a driver with relevant information about chemical testing and the implied consent law. *Muniz*, —— U.S. at ——, 110 S.Ct. at 2651. *See State v. Kieley*, 413 N.W.2d 886 (Minn.App.1987) (court permits " 'booking' videotapes," having revealed that these included an implied consent advisory, but without discussion of advisory conversation or its constitutional implications); *State v. Johnson*, 396 N.W.2d 906 (Minn.App.1986) (content of advisory held admissible as

against hearsay objection, without review of constitutional issues).

■ b. As observed earlier, there is no interrogation for purposes of *Miranda* in asking for a driver's decision either to permit or refuse chemical testing.[3] *See also Muniz*, —— U.S. at ——, n. 19, 110 S.Ct. at 2652, n. 19. Also, "limited," "carefully worded," and "focused" inquiries as to whether the driver understands instructions or advice given by the officer are "necessarily 'attendant to' " the officer's request for action or for a decision to permit or refuse testing. *Muniz*, —— U.S. at ——, 110 S.Ct. at 2651. *See South Dakota v. Neville*, 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15 (permitting evidence on request for decision).

■ c. Insofar as a driver's responses are not incriminating as a matter of content, it is legitimate to admit evidence of interrogation and responses as they tend to show intoxication because of the slurred nature of speech. *Muniz*, —— U.S. at ——, 110 S.Ct. at 2645. *See Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1831–32, 16 L.Ed.2d 908 (1966) (drawing distinction between testimonial and real or physical evidence).

■ d. Questions not attendant to the advisory and that are aimed at testing for intoxication by learning whether the contents of a driver's responses show lucid thinking, constitute interrogation to produce a testimonial response and must be preceded by advice on constitutional rights of silence and the assistance of counsel. *Muniz*, —— U.S. at ——–——, 110 S.Ct. at 2644–46 (driver asked to state date of his sixth birthday, with a response indicating the driver could not remember).[4] The Su-

---

**2.** "It is axiomatic that a state supreme court may interpret its own state constitution to offer greater protection of individual rights than does the federal constitution." *State v. Fuller*, 374 N.W.2d 722, 726 (Minn.1985); *see Nyflot*, 369 N.W.2d at 523 (Yetka, J., dissenting) (urging expanded protection under the state constitution for drivers confronted with a demand to permit or refuse chemical testing). Our decision here is premised on an assumption regarding the authority of *Muniz* in Minnesota; we believe it necessary on our part to defer to the judgment of the "state supreme court," *Fuller*, 374 N.W.2d at 726, on the question whether the

Minnesota constitution may be interpreted to offer greater protection of individual rights than the federal constitution in the circumstances of this case.

**3.** *See* footnote 1.

**4.** Questions on whether the driver understands an officer's advice also tend to test the driver's lucidity and sobriety. These inquiries, however, as observed earlier, were classified by the *Muniz* court a necessary part of permissible instructions and advice by the officer. *Muniz*, —— U.S. at ——, 110 S.Ct. at 2651.

preme Court recognizes that "the vast majority of verbal statements" are testimonial. *Id.* at ——, 110 S.Ct. at 2647 (quoting *Doe v. United States,* 487 U.S. 201, 213, 108 S.Ct. 2341, 2349, 101 L.Ed.2d 184 (1988)). Testimonial responses are those where the person interviewed is faced with the "cruel trilemma" of furnishing incriminating information either by a true answer, falsity, or no response. *Id.* at ——, 110 S.Ct. at 2647.

▪ e. Additional questions needed to properly record the driver's identification are among routine booking inquiries exempted from the coverage of *Miranda. Muniz,* —— U.S. at —— - ——, 110 S.Ct. at 2648–49; *see id.* at ——, 110 S.Ct. at 2653 (Rehnquist, C.J., concurring on other grounds); *see also Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (questioning attendant to arrest and custody not subject to *Miranda); Kieley,* 413 N.W.2d at 887–88 (video of booking held admissible).

▪ f. Whether or not interrogation occurs, if it produces non-incriminating statements, it is not error to admit the questions and answers. *Muniz,* —— U.S. at —— n. 17, 110 S.Ct. at 2651 n. 17.

▪ Under these principles, no significant portion of the advisory conversation demonstrated here was inadmissible under *Miranda.* Much of the conversation was no more than the giving of information. Questioning on consent and on the understanding of advice also came within the parameters of admissible evidence under *Muniz.* Many of appellant's responses were not incriminating in fact.

These particular portions of the advisory prospectively involve controversy:

▪ a. Under controlling standards, the most problematic item in the conversation was likely the officer's first remark, provoking appellant to comment on the appearance that he was tired. This question was not attendant to the advisory, and the remark was likely to produce a response tending to show whether appellant was thinking and acting soberly. As such, the officer's question may have constituted interrogation which was impermissible without prior advice on constitutional rights. *Muniz,* —— U.S. at —— - ——, 110 S.Ct. at 2644–46. The driver's contemptuous response may have been an incriminating testimonial response, as may have been any answer to the remark. *See id.* at ——, 110 S.Ct. at 2647 (wrongful interrogation in putting before an individual "the cruel trilemma of self-accusation, perjury or contempt"). Given the precisely defined standards found in *Muniz,* proposals to demonstrate advisory conversations require careful scrutiny in order to exclude from evidence those questions which are not necessary to the advisory and which call for either response or silence tending because of its content to show the lack of a driver's sobriety. *See id.* Here, however, we are not compelled to decide whether such an error definitely occurred, because the single question involved is an insignificant part of the evidence produced by the state. *State v. Robinson,* 427 N.W.2d 217, 224 (Minn.1988) (evaluation of evidence for harmlessness). If admission of the question and response constituted error, it was harmless by itself.

▪ b. *Muniz* specifically approves "limited and focused inquiries" on the understanding of advice given by an officer. *Muniz,* —— U.S. at ——, 110 S.Ct. at 2651. Unquestionably, the inquiries on appellant's understanding of advice were unusually numerous and were not wholly "focused." Nevertheless, these questions and answers were within the scope of questioning, attendant to the advisory, and were admissible under *Neville* and *Muniz.*

c. When approving evidence on the contents of an advisory, the *Muniz* court observed that the advisory before it was constituted of "carefully scripted instructions." *Id.* at ——, 110 S.Ct. at 2651. The advisory before us became unscripted, prolonged by a long series of questions and concerns posed by appellant. In addition, the advisory involves vague comments on the effects of delay in responding to the request for testing. The advisory included numerous, confusing observations on the need for a blood or a urine test and the

unavailable alternative of a breath test. The advisory conversation was extended by appellant's request to go to the bathroom, and the officer's attempts to explain why this could not be permitted. undoubtedly, the simplicity and clarity of the Minnesota advisory could be improved. Nevertheless, this advisory was not outside the parameters of what *Muniz* declares to be non-interrogation.

d. The advisory here was prolonged particularly because of the statement that the driver had a right to counsel but that the right would not arise until he submitted to testing. This confusing and controversial observation prompted extensive, potentially incriminating comments of appellant on his claim for a right to talk to an attorney. Here again, although the advisory conversation is at the troublesome fringes of admissible evidence, it is within the scope of non-interrogation contemplated by *Muniz*.

e. Finally, as appellant here observes, the advisory on alternative testing threatens to bind the driver with an implication that another test was not needed or that it confirmed the state's test. However, the topic of alternative testing is attendant to implied consent advisories and questions provable under *Neville* and *Muniz*. In addition, on the record here there was no abuse of discretion in the trial court's choice to exclude testimony of appellant on his inability to obtain a second test. The probative character of the evidence was limited in light of the absence of any record that the state capitalized on inferences from evidence about appellant's right for a second test.

Appellant also contends that the implied consent advisory and responses were irrelevant. This issue focuses on whether the evidence was obtained in violation of fundamental rights, and the ultimate question is no different than the issue on constitutionality of the evidence. There was no abuse of discretion in the trial court's conclusion that the evidence was relevant.

2. Admissibility of test.

Appellant contends he was prevented by Officer Hoffman from obtaining an additional test, and thus that the state's blood test evidence was inadmissible. We disagree. Appellant was duly advised on his right to get a test and was never refused use of a telephone. *See* Minn.Stat. § 169.123, subd. 3 (1988) (state's test inadmissible only if officer prevents or denies the additional test). Moreover, appellant was released after the blood sample was taken, and he thereafter had unimpaired freedom to seek an additional test.

## DECISION

There was no reversible error in admitting the audio recording of statements and questions exchanged during the implied consent advisory.

Affirmed.

SHORT, Judge (concurring specially).

I concur with the result reached by the majority, but write separately to emphasize the analytical approach set forth in *Pennsylvania v. Muniz*, —— U.S. ——, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990).

The nontestimonial aspects of the videotape do not invoke fifth amendment scrutiny. *See Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966); *State v. Breeden*, 374 N.W.2d 560, 562 (Minn.App.1985). Incriminating communications that are (1) testimonial in nature and (2) elicited during custodial interrogation, must be suppressed in the absence of *Miranda* warnings. *Muniz*, —— U.S. at ——, 110 S.Ct. at 2643.

A communication is testimonial if it explicitly or implicitly relates a factual assertion or discloses information. *Id.* at ——. 110 S.Ct. at 2643. The incriminating inference must be drawn from the testimonial act. *Id.* at ——, 110 S.Ct. at 2644. Custodial interrogation is questioning that the police should know is reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

Appellant's first communicative act on the videotape occurred after the officer said: "Sure got tired all of a sudden, didn't

ya?" Appellant responded: "F[ * * * ] you." The officer's comment referred to the fact that appellant was repeatedly yawning as the officer prepared to read the Implied Consent Advisory. The majority holds this exchange may violate *Miranda*, but is harmless beyond a reasonable doubt. I would not reach the question of harmless error because appellant's response simply conveyed no testimonial information. The response was incriminating only because it revealed anger and poor judgment, which may be indicia of intoxication.

By contrast, the officer in *Muniz* asked the suspect if he knew the date of his sixth birthday. The suspect stated he did not. The majority held forcing the suspect to incriminate himself by admitting his inability to perform a simple mental calculation violated his fifth amendment rights. Appellant in our case did not admit any incriminating fact.

The next group of communicative acts is appellant's questions and comments while the officer read the Implied Consent Advisory. Many of the remarks were incriminating because they demonstrated appellant's mental confusion, but none conveyed testimonial information. More significantly, questioning as to a suspect's understanding of implied consent law is not interrogation within the scope of *Miranda*. *See Muniz*, —— U.S. at ——, 110 S.Ct. at 2651. The questions are not intended to elicit incriminating testimonial responses. *Id.*

The final group of communicative acts is appellant's responses when asked if he would submit to testing. It has long been established that a request to submit to testing is not interrogation under *Miranda*. *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983). Thus, any responses to such a question are not inadmissible under *Miranda*. *Muniz*, —— U.S. at ——, 110 S.Ct. at 2651.