United States Court of Appeals,

Fifth Circuit.

No. 92-1202.

Louis Earl PRESLEY, Plaintiff-Appellant,

v.

CITY OF BENBROOK, et al., Defendants,

City of Benbrook, et al., Defendants-Appellees.

Oct. 14, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Louis Earl Presley was arrested because he chose not to speak to police and was mistaken for a violent suspect whom they were trying to arrest in a sexual assault case. Naturally, he sued the arresting officers and the City of Benbrook, Texas, contending, *inter alia,* that the officers' entry into his house and arrest violated the Fourth Amendment and that Texas Penal Code § 38.02(a), the failure to identify statute, is unconstitutional on its face and as applied. The district court granted summary judgment on his challenge to section 38.02(a), while a jury determined that although the officers' conduct was objectively unreasonable under the totality of the circumstances, they were entitled to qualified immunity. From these decisions, Presley appeals. We find no error and affirm.

BACKGROUND

In the late afternoon of July 11, 1988, Lieutenant Sam Horan and Officer David Wallace, along with other law enforcement officers, gathered near the 300 block of Loch Ness Lane in the City of Benbrook to attempt to serve a felony arrest warrant for sexual assault on Douglas Beckley, a man known to be violent. They believed he might be hiding at his parents' house at 313 Loch Ness. By prearrangement, Officers Wallace and Horan positioned themselves at locations from which they could detect any escape attempt. Five to ten minutes later, Presley drove down Loch Ness in his blue pickup truck past Number 313 to the cul-de-sac at its deadend, turned around, drove slowly back by

Number 313 and continued down to his residence at 113 Loch Ness Lane, where he pulled into the driveway. Because of his slow and suspicious movements, the detective who was then speaking with Douglas Beckley's mother believed Presley might be a friend of Beckley who was going to pick him up for a getaway, and he (the detective) radioed Officer Wallace, whose car was stationed down the street, to stop the blue pickup.

What happened next is disputed. Officer Wallace testified that he approached Presley in front of Presley's house. Presley did not respond to Wallace's motion to walk over and talk to him, and he adamantly refused to produce a driver's license, stating that he had none there and did not have to show it to Officer Wallace in any case. He refused to identify himself or show any type of identification to Officer Wallace. Lieutenant Horan, arriving on the scene, heard this conversation; based on Presley's belligerence and the general description of Douglas Beckley he had received, the lieutenant became convinced that this was Beckley.

Presley, for his part, acknowledges only that after he was informed that he was not under arrest, he turned and walked into his house without providing identification to the policeman and closed the door behind him.

As Presley walked toward his door, Officer Wallace delivered an ultimatum: "If you go into the house I'm going to have to follow you", but Presley ignored it. Officer Wallace then followed Presley into the house with Lieutenant Horan behind. The police had observed Presley commit the misdemeanor offense of failing to furnish a driver's license on demand of an officer, and they believed they were authorized to effect an arrest for that misdemeanor. Once inside the house, the officers continued to ask Presley for identification, and he continued to refuse. They arrested him for failing to display a drivers license, placed him in a squad car, drove him to the Benbrook City Jail and booked him there. Throughout this time, the officers repeatedly asked Presley for identification. He refused to cooperate. The officers learned his correct name when the young lady who had been in his house brought his driver's license to the station.

Presley was charged with violating two Texas "failure to identify" statutes: the driver's license statute, Tex.Rev.Civ.Stat.Ann. art. 6687b, § 13; and the law requiring him to identify himself after

a lawful arrest, Texas Penal Code § 38.02(a). Those charges were later dismissed.

Presley then filed his § 1983 suit in federal court. On appeal from the district court's adverse judgment, Presley raises two issues. He asserts that Section 38.02(a) is unconstitutionally vague and mandates unconstitutional self-incrimination. He also contests, on legal and factual grounds, the jury finding that the arresting officers were entitled to qualified immunity for their entry into his house. We address each of the issues in turn.

Constitutionality of Texas "Failure to Identify" Law

Texas Penal Code § 38.02(a) (Vernon 1989) provides in relevant part:

Section 38.02. Failure to Identify.

(a) A person commits an offense if he intentionally refuses to report or give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information.

The statute requires an arrestee to provide his name, address or date of birth to a peace officer who has requested the information. Presley's challenge faces the initial hurdle that § 38.02 has been upheld *sub silentio* several times. *See Apodaca v. Texas,* 444 U.S. 987, 100 S.Ct. 516, 62 L.Ed.2d 417 (1979) (summarily dismissing an appeal of § 38.02 on facts similar to the instant case); *Spring v. Caldwell,* 92 F.R.D. 7, 11-13 (S.D.Tex.1981) (discussing *Apodaca*); *Ledesma v. State,* 677 S.W.2d 529, 530-31 (Tex.Crim.App.1984) (affirming § 38.02 *sub silentio* in finding that the elements of the crime were fulfilled).[1]

An even more daunting obstacle, which Presley's brief largely ignores, exists in *Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). In *Muniz,* the Court, although divided in its reasoning, held that routine questions may be asked a suspect for the purpose of expediting the booking process without violating his Fifth Amendment rights. 496 U.S. at 600-601, 110 S.Ct. 2650-51. The permissible booking questions include data such as a suspect's name,

---

[1]A previous version of Section 38.02 was amended, effective September 1987, after a fourth amendment challenge upheld by the Supreme Court. *See Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (holding that § 38.02 as drafted by the 1974 legislature was unconstitutional because it allowed an officer to stop and demand identification of an individual "without any specific basis or belief that he [was] involved in criminal activity", 443 U.S. at 52, 99 S.Ct. at 2641).

address, height, weight, eye color, date of birth and current age.[2]  Section 38.02(a) requires only some of this information and, as such, was upheld by this court against a Fifth Amendment challenge even before *Muniz.*  *Gladden v. Roach,* 864 F.2d 1196, (5th Cir.1989).  Since Presley was asked nothing outside of this well-established exception to the Fifth Amendment, he has no constitutional claim.

Presley's vagueness challenge is similarly meritless.  The test for vagueness was summarized by the Supreme Court in *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983):

> The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that no ordinary people can understand what comment is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement.

461 U.S. at 357, 103 S.Ct. at 1858.  Presley relies on *Kolender* for the proposition that the word *lawful* is inherently vague and fails to give notice because a citizen will rarely know for sure whether the arrest was "lawful".  *Kolender* states no such proposition.  461 U.S. at 358, 103 S.Ct. at 1858.  In that case, the vague words were "credible and reliable identification", and vagueness arose not only because a citizen did not know how to comply, but also from the unconstrained latitude the vague law afforded the police to determine what was illegal conduct.

Neither of those characteristics of an unconstitutionally vague law pertains here.  Whether the arrest is "lawful" is not a precondition for the citizen's compliance with § 38.02(a).  Moreover, "lawful" describes the source of the officer's authority, not the scope of his enforcement authority under the statute.  The law does not broaden an officer's authority to effect a "lawful" arrest;  it does not permit discretion in determining what is a violation of § 38.02(a).  To illustrate these points, one might disagree with a police officer's decision to arrest him for speeding, because the arrestee believed that he was not going above the limit.  The disagreement over the speeding ticket would, however,

---

[2]In the wake of *Muniz,* it has been universally accepted by courts, both federal and state, that a routine booking question exception to the Fifth Amendment exists. *United States v. Clark,* 982 F.2d 965, 967-68 (6th Cir.1993) (noting that the booking exception to *Muniz* trumps the defendant's Fifth Amendment rights against self incrimination);  *United States v. Henley,* 984 F.2d 1040, 1042 (9th Cir.1993) (same);  *United States v. Leung,* 929 F.2d 1204, 1209 (7th Cir.1991) (same), *cert. denied* --- U.S. ----, 112 S.Ct. 297, 116 L.Ed. 241 (1991);  *Magar v. State,* 39 Ark.App. 49, 836 S.W.2d 385, 386 (1992) (same);  *Commonwealth v. Daniels,* 531 Pa. 210, 612 A.2d 395, 401 (1992) (same);  *State v. Whitehead,* 458 N.W.2d 145, 149 (Minn.Ct.App.1990) (same).

not relieve the arrestee from compliance with § 38.02(a) because the police officer was acting under color of his "lawful" post. We hold, as have other courts, that "lawful" is not an unconstitutionally vague term.[3]

## Propriety of Jury Finding of Qualified Immunity

Presley also argues that the trial court erred by submitting to the jury an interrogatory asking whether the officers were entitled to qualified immunity for entering his home. He does not disagree that the question whether the entry violated the Fourth Amendment was properly submitted to the jury. The jury answered this question in his favor. What he dislikes is the jury's additional finding that "a reasonable officer possessing knowledge of clearly established law and the information they knew at the time, could have believed that entry of his residence was lawful."[4]

The difference between these findings reflects remarkable discernment by a jury in an area in which even judges get confused. The answers, notwithstanding Presley's argument, are not inconsistent. *See Anderson v. Creighton,* 483 U.S. 635, 644, 107 S.Ct. 3034, 3041, 97 L.Ed.2d 523 (1987). Indeed, they reflect the essence of qualified immunity: that an officer may make mistakes that infringe constitutional rights and yet not be held liable where, given unclear law or uncertain circumstances, it cannot be said that she knew she was violating a person's rights. *See Anderson,* 483 U.S. at 642, 107 S.Ct. at 3039-40: "... it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such

---

[3]In fact, every court that has examined whether the term "lawful" and particularly "lawful arrest", is inherently vague has found that it is not. In *Cole v. Arkansas,* 338 U.S. 345, 354, 70 S.Ct. 172, 176-77, 94 L.Ed. 155 (1949), the Supreme Court found that the term "lawful vocation" when used as an element of a crime of assembling to prevent the engaging in a lawful occupation was not vague. *Songer v. Wainwright,* 571 F.Supp. 1384, 1400 (M.D.Fla.1983), *vacated on other grounds,* 758 F.2d 552 (11th Cir.1985); *City of Seattle v. Cadigan,* 55 Wash.App. 30, 776 P.2d 727, 732-34 (1989), *review denied,* 113 Wash.2d 1025, 782 P.2d 1069 (1989); *State v. Goree,* 36 Wash.App. 205, 673 P.2d 194, 196-97 (1983) (excellent discussion of the specificity of the term "lawful arrest"), *review denied,* 101 P.2d 1003 (Wash.1989).

[4]Specifically, the jury issue stated:

> Do you find from a preponderance of the evidence that a reasonable officer possessing knowledge of clearly established law and the information known by the officers at the time, could have believed that the entry of plaintiff's residence was lawful?

cases those officers ... should not be held personally liable."

Be that as it may, Presley protests that the question of immunity should not have been submitted to the jury at all but is a question of law for the court. Presley points to *Hunter v. Bryant,* --- U.S. ----, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), in which the Supreme Court has said that immunity is a question that should ordinarily be settled at the earliest possible stage in litigation. --- U.S. at ----, 112 S.Ct. at 536. We agree, as we must, with this precept. Its purpose is two-fold. First, it enforces the guarantee of qualified immunity as a *defense against suit* and not merely against liability. Second, that statement recognizes that insofar as immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs,* 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98, 89 L.Ed.2d 271 (1986), it is an issue that may ordinarily be resolved no later than after preliminary discovery specifically related to qualified immunity. *Anderson, supra,* 483 U.S. at 647, n. 6, 107 S.Ct. at 3042, n. 6.

Immunity's shield against suit is lost, of course, when police officer defendants go to trial. At that point, if—and this is a big if—there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.[5] *Melear v. Spears,* 862 F.2d 1177 and Higginbotham, J., concurring 1187-88 (5th Cir.1989). That is what they did here. We need not scrutinize the able district court's decision that material fact issues underlay the immunity decision. In these circumstances, there was no error.

Tied to Presley's argument that the court should have decided immunity is a factual challenge to the jury's decision. Thus, not only does Presley take issue with the identity of the decisionmaker on immunity, but with the factual finding that immunity was warranted. Like his other contentions, this one must fail. A fact finder could have decided that Officers Wallace and Horan reasonably believed, based on the information then known to them, that Presley was in fact Beckley, the violent suspect whom they had come to arrest. Pursuant to the warrant for Beckley, and thinking Presley

---

[5]The Fifth Circuit pattern jury charge exemplifies how a jury would determine qualified immunity in excessive force and certain fourth amendment cases. *See* Fifth Circuit Pattern Jury Charges §§ 10.1, 10.2, 10.5 (West 1993). We do not here endorse all these charges, but simply observe that it is not impossible for a jury to be asked such questions.

was Beckley, they would have been entitled to enter Presley's home. Alternatively, the fact finder could have decided that the officers, insisting on Presley's compliance with the driver's license identification law, reasonably pursued him into the house to arrest him for that violation. Under either scenario, their actions would have been shielded by qualified immunity. It is therefore impossible to rule as a matter of law, as Presley seeks, that the officers' actions did not warrant qualified immunity.

For the foregoing reasons, the judgment of the district court is AFFIRMED.