Timothy Wayne **UMPHLETT,**
Petitioner, **Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C6–94–2331.

Court of Appeals of Minnesota.

June 27, 1995.

Review Denied Aug. 30, 1995.

Richard L. Swanson, Chaska, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by AMUNDSON, P.J., and PETERSON and STONE,* JJ.

## OPINION

AMUNDSON, Judge.

Appellant Timothy Wayne Umphlett challenges the district court's order sustaining the revocation of his driver's license, arguing that (1) he was denied an opportunity for an additional test, (2) his limited right to counsel was not vindicated because he was not given a reasonable time to contact an attorney, and (3) the doctrine of *State v. Scales*, 518 N.W.2d 587 (Minn.1994) (requiring police officers to record custodial interrogation of suspects) should apply to implied consent proceedings. We affirm.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

On August 7, 1994, a state trooper arrested appellant Timothy Umphlett and transported him to the Carver County Jail. The trooper started reading the implied consent form at 8:44 p.m. When the trooper asked Umphlett if he wanted to consult with an attorney, he said "Yes." The trooper handed Umphlett a phone and "several phone books" including the Minneapolis/St. Paul yellow pages and white pages and the local Chaska phone book at 8:50 p.m. The trooper testified that Umphlett "looked through the phone book pretty vigorously" and that he made two phone calls. The trooper indicated that Umphlett stopped trying to contact an attorney at 9:27 p.m. The trooper testified that it was Umphlett's decision to stop using the phone. The trooper said he knew that because "He wasn't using the phone. He then said he was ready to take the test." The trooper testified that he gave Umphlett a "set time" [30 minutes]. The trooper stated that it was the policy of the department to leave the amount of time a driver was allowed to contact an attorney to the discretion of the arresting officer, and that in "most circumstances" he considered 30 minutes a reasonable time.

During the 37 minutes, Umphlett called his brother and tried to contact his current attorney, but was unsuccessful. Umphlett testified that during those 37 minutes, he spent about 6 minutes talking on the phone. Umphlett explained that he only made two phone calls in 37 minutes because "there were interruptions and conversations between myself and the officer and I was, I did not know Richard Swanson's full name or last name or how to really contact him so I was trying to find him for a substantial time."

Umphlett testified that he requested a second test, and that he and the trooper discussed the pros and cons of the various kinds of tests. Umphlett testified that he also told the detox facility person about his request for a blood test.

The trooper testified that Umphlett did not ask for a test other than a breath test and also indicated that he "could not recall" Umphlett asking about a blood or urine test. The trooper stated that if Umphlett had asked for another test "Normally, I would note it; in this case on the breath intoxilyzer record, and I would just advise him it's financially their burden to obtain and to get a second test." The trooper also stated that he did not note anything on the Intoxilyzer test record about a request for an additional test.

The trooper stated that he did not recall having a discussion with Umphlett about the pros and cons of blood and urine tests. Later, he stated that he did not have such a discussion, and if he had had such a discussion, he would have remembered it.

Following Umphlett's petition for review of his license revocation, the district court sustained the revocation. The court made no findings regarding whether Umphlett requested a second test. This appeal followed.

## ISSUES

1. Did the district court err in determining that appellant was not denied an opportunity for an additional test?

2. Did the district court err in determining that appellant was given a reasonable time to contact and talk with counsel?

3. Does *State v. Scales*, 518 N.W.2d 587 (Minn.1994) require that the reading of the implied consent advisory be electronically recorded?

## ANALYSIS

### I. *Additional Test*

Umphlett claims he was denied an opportunity for an additional test.

■ A person who is tested under the implied consent law has the right to have someone of the person's own choosing administer an additional chemical test. Minn.Stat. § 169.123, subd. 3 (1994). The failure or inability to obtain an additional test does not preclude the admission of the Intoxilyzer test administered by the officer "unless the additional test was prevented or denied by the peace officer." *Id.* This court has held that the only obligation an officer has in assisting the driver in obtaining an additional test is to allow the driver use of a phone. *Frost v.*

*Commissioner of Pub. Safety,* 348 N.W.2d 803, 804 (Minn.App.1984).

■ The testimony is conflicting regarding whether Umphlett requested an additional test. Umphlett claims that he did. The trooper testified that he did not. The trial court did not make a specific finding on this issue. Given the trial court's resolution of the second test issue, however, it implicitly found that the officer's testimony was more credible regarding the request for a second test. Thus, we conclude that Umphlett was not denied an opportunity for an additional test.

## II. Limited Right to Counsel

Umphlett argues that his limited right to counsel was not vindicated.

■ The Minnesota Constitution gives a driver a limited right to consult an attorney before deciding whether or not to submit to chemical testing for alcohol concentration. *Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 835 (Minn.1991). The driver must be informed of this right, and the police officers must assist in its vindication. *Id.* The Minnesota Supreme Court has stated that "[t]he right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Prideaux v. Department of Pub. Safety,* 310 Minn. 405, 421, 247 N.W.2d 385, 394 (1976).

Umphlett argues that 37 minutes was not a reasonable time in this case. Umphlett relies on *Kuhn v. Commissioner of Pub. Safety,* 488 N.W.2d 838, (Minn.App.1992), *pet. for rev. denied* (Minn. Oct. 20, 1992) and *Parsons v. Commissioner of Pub. Safety,* 488 N.W.2d 500 (Minn.App.1992).

In *Kuhn,* this court determined that 24 minutes was not sufficient time. 488 N.W.2d at 839. This court pointed out that the driver made a "sincere effort to call and consult with an attorney" and there was nothing in the record to indicate that the driver "was using delaying tactics or decided on his own to stop trying to reach an attorney." *Id.* at 842. In addition, the driver was trying to contact an attorney at 2:03 a.m. on a Monday

morning "when presumably attorneys are not available." *Id.* The court noted that there was a one hour delay between the time of arrest and the test. *Id.*

In *Parsons,* this court held that 40 minutes was a reasonable amount of time. 488 N.W.2d at 502. In that case, the driver started trying to contact an attorney at 1:39 a.m. and

> (a) Parsons was provided a telephone and telephone directories; (b) she was free to call anyone she wanted; (c) she had access to the phone for approximately 40 minutes; (d) she telephoned a non-lawyer friend and spent about 13 minutes talking to him; and (e) she understood her time to consult with counsel was limited.

*Id.*

■ In this case, Umphlett was trying to contact an attorney at about 9 p.m., not 2 a.m. as in *Kuhn* and *Parsons.* Umphlett had about 50% more time to call than did the driver in *Kuhn* (24 versus 37 minutes), and slightly less than the driver in *Parsons* (37 versus 40 minutes). During the 37 minutes, Umphlett only made two phone calls and talked for a total of about six minutes. During the first 15 minutes, all he did was look through the phone book. Like the driver in *Parsons,* Umphlett understood that his time to consult with counsel was limited. Thus, given the time of day, the amount of time he was given, that he understood that his time was limited, and that he only made two calls during that time, we conclude that the district court properly determined that Umphlett was given a reasonable time to contact counsel.

## III. Recording Requirement

■ Umphlett argues that *State v. Scales,* 518 N.W.2d 587 (Minn.1994) should apply to implied consent proceedings to require that the reading of the implied consent advisory be electronically recorded.

In *Scales,* a first degree murder case, the supreme court held that:

> All *custodial interrogation,* including any information about rights, and all questioning shall be electronically recorded where feasible and must be recorded when ques-

tioning occurs in a place of detention. If law enforcement officers fail to comply with this recording requirement, any statements the suspect makes in response to the interrogation may be suppressed at trial.

*Id.* at 588 (emphasis added). This rule applies prospectively from the date of the opinion, June 30, 1994 (about a month before Umphlett's arrest). *Id.* at 593.

■ The court did not base its decision on the Federal Constitution (it noted that the Supreme Court has not addressed the issue directly) or the Minnesota Constitution (it chose not to reach the state constitutional issue). *Id.* at 592. Instead, the court based the decision on the supreme court's "supervisory power to insure the fair administration of justice." *Id.* This supervisory power derives from the supreme court's power to supervise the trial court. *See State v. Salitros,* 499 N.W.2d 815, 820 (Minn.1993).

The threshold question for determining whether *Scales* applies is whether the reading of the Implied Consent Advisory is a "custodial interrogation."

Umphlett argues that it is not necessary to determine whether the reading of the advisory is a custodial interrogation because *Scales* was based on the court's supervisory power rather than the federal or Minnesota constitutions. Umphlett does not explain why it is not necessary, and cites no authority for the proposition. Since this court does not have supervisory power, we are reluctant to expand the holding beyond the rule announced in *Scales.*

The Commissioner argues that the implied consent test request is not a custodial interrogation and thus the test request need not be recorded. The Commissioner properly notes that the Minnesota Supreme Court has held that a *Miranda* warning is not required before advising a driver of the provisions of the implied consent law and administering a breath test. *See State v. Gross,* 335 N.W.2d 509, 510 (Minn.1983). This court has also noted that "[i]t is not interrogation to provide a driver with relevant information about chemical testing and the implied consent law" and that "there is no interrogation for purposes of *Miranda* in asking for a driver's decision to either permit or refuse chemical testing." *State v. Whitehead,* 458 N.W.2d 145, 148 (Minn.App.1990) (citing *Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990)), *pet. for rev. denied* (Minn. Sept. 14, 1990).

■ Umphlett argues that because the implied consent advisory has been expanded since *Whitehead* was decided to include information about the limited right to consult with an attorney, and because refusal to consent to testing is now a crime, the *Whitehead* decision is no longer applicable. As the Commissioner correctly notes, however, the supreme court has rejected the argument that a *Miranda* warning was required after Minnesota's addition of potential criminal penalties for refusal to submit to testing. *See McDonnell v. Commissioner of Pub. Safety,* 473 N.W.2d 848, 855–56 (Minn.1991). Not only is no *Miranda* warning required before the reading of the advisory, but even if a police officer makes no attempt to read a suspect the advisory, the evidence of chemical testing is still admissible in a criminal prosecution. *Tyler v. Commissioner of Pub. Safety,* 368 N.W.2d 275, 278 (Minn.1985); *State v. Schauer,* 501 N.W.2d 673, 675 (Minn. App.1993).

Thus, because the supreme court and this court have indicated that the implied consent test request is not a custodial interrogation, and no Minnesota case has applied *Scales* to implied consent proceedings, we hold that *Scales* does not apply to this case.

## DECISION

The district court did not err in determining that Umphlett was not denied an opportunity for an additional test. The district court did not err in determining that Umphlett was given a reasonable time to contact and talk with counsel. *Scales* does not require that the reading of the implied consent advisory be electronically recorded.

**Affirmed.**