*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1244**

State of Minnesota,
Respondent,

vs.

Kyle Allen Snyder,
Appellant

**Filed August 3, 2015
Affirmed
Smith, Judge**

Kandiyohi County District Court
File No. 34-CR-13-649

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Shane D. Baker, Kandiyohi County Attorney, Willmar, Minnesota (for respondent)

Daniel Mohs, Spicer, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Hudson, Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm the district court's denial of a motion to suppress breath-test results because the police officer did not coerce appellant Kyle Snyder into consenting to the breath test.

## FACTS

Deputy Jared Lange stopped Snyder's truck because his tail light was out. During the traffic stop, Deputy Lange observed that Snyder's eyes were bloodshot and watery and he had the "odor of an alcoholic beverage coming from him." After performing field sobriety tests and a preliminary breath test, Deputy Lange arrested Snyder for driving while impaired (DWI). Deputy Lange then read Snyder the implied-consent advisory. Snyder "concedes that Deputy Lange had a lawful basis to stop his vehicle, had probable cause to believe he was driving while impaired, lawfully placed [him] under arrest and properly advised him of the statutory requirements regarding chemical testing under the implied consent law."

After hearing the implied-consent advisory, Snyder stated that he thought he had a right to a blood test. Deputy Lange responded that he was only offering a breath test, but that Snyder could arrange an additional blood test on his own and at his own expense if he wanted one. Snyder agreed to a breath test. Deputy Lange wrote in his report that he said he "would help [Snyder] make the arrangements and make sure he was able to get that additional test" if Snyder was held in jail. But the video recording of Deputy Lange reading the implied-consent advisory did not reveal any such promise made before Snyder agreed to and took the breath test.

The breath test measured Snyder's alcohol concentration at .12. Deputy Lange explained that Snyder would be held in jail, and Snyder "indicated he had no further questions." Snyder was then booked into jail.

The state charged Snyder with second-degree DWI, and Snyder moved to suppress the breath test results as an unreasonable, warrantless search. The district court denied Snyder's motion. On stipulated facts, Minn. R. Crim. P. 26.01, subd. 4, the district court found Snyder guilty.

## DECISION

Snyder argues that he was coerced into consenting to a breath test by Deputy Lange's promise to assist him with obtaining an additional blood test and by stating in the implied-consent advisory that test refusal is a crime.

The federal and state constitutions prohibit unreasonable warrantless searches. *See* U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989). But a warrantless search is not unreasonable "if the subject of the search consents." *See State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). "The question of whether consent is voluntary is a question of fact," *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992), and we therefore review for clear error, *State v. Cox*, 807 N.W.2d 447, 450 (Minn. App. 2011). "Whether consent is voluntary is determined by examining the totality of the circumstances." *Brooks*, 838 N.W.2d at 568 (quotation omitted).

Generally, an officer is not acting coercively when he provides an accurate summary of relevant law. *See Moe v. Comm'r of Pub. Safety*, 574 N.W.2d 96, 98-99 (Minn. App. 1998), *review denied* (Minn. Apr. 14, 1998). A person who has submitted to chemical testing has the right to an additional test by his own arrangement and at his own

3

expense. Minn. Stat. § 169A.51, subd. 7(b) (2014). "The failure or inability to obtain an additional test does not preclude the admission of the [breath] test administered by the officer unless the additional test was prevented or denied by the peace officer." *Umphlett v. Comm'r of Pub. Safety*, 533 N.W.2d 636, 638 (Minn. App. 1995) (quotation omitted), *review denied* (Minn. Aug. 30, 1995).

An officer is under no obligation to explain the right to additional testing or ask the driver if he would like additional testing. *Schulz v. Comm'r of Pub. Safety*, 760 N.W.2d 331, 334 (Minn. App. 2009). By discussing the right to additional testing, Deputy Lange did not engage in a coercive tactic, but rather accurately explained the law regarding additional testing. None of Deputy Lange's statements on the video recording could be construed as a promise to assist with additional testing, notwithstanding the phrasing of the incident report. But, even if they could be, Snyder was obliged to make an affirmative request for additional testing because Snyder testified that the deputy's offer of assistance was contingent upon whether he actually wanted an additional test. Whether Snyder made such a request is also a factual question, subject to review for clear error. *See id.* at 333-34.

In *Schulz*, the driver requested a blood test when offered a urine test, but the officer declined. *Id.* at 332. After submitting to a urine test, the driver made no request for additional testing. *Id.* at 333. We concluded that the driver failed to assert his right to additional chemical testing by failing to request it after submitting to the offered test. *Id.* at 335. Similarly, Snyder expressed a preference for a blood test over a breath test, but made no request for additional testing after the breath test, despite being informed about

4

his right.  Snyder testified that Deputy Lange offered to help him with additional testing if he wanted it, but that he did not specifically request an additional test from Deputy Lange, the booking officer, or the officer that escorted him to the holding cell.

The implied-consent video recording also demonstrates that Deputy Lange explained that Snyder could arrange his own additional test if he wanted, but Snyder never confirmed that he wanted an additional test either before or after agreeing to the breath test.  In fact, after agreeing to the breath test, Snyder stated that he had asked about a blood test because he was under the impression that, by requesting a blood test, he would be immediately released and he needed to get home to his children because his wife was out of town.  After learning that requesting a blood test would have no effect on his release, Snyder did not show any further interest in an additional test.  Therefore, the district court did not clearly err by finding that Snyder made no request for additional testing and that Deputy Lange's statements were not coercive.

In addition, the Minnesota Supreme Court has expressly rejected the argument that the implied-consent advisory is unconstitutionally coercive.  *See Brooks*, 838 N.W.2d at 568.  Because neither Deputy Lange's statements nor the implied-consent advisory were unconstitutionally coercive, the district court did not clearly err by finding that Snyder voluntarily consented to the breath test.

**Affirmed.**